UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HOMELAND INS. CO. OF DELAWARE,

       Plaintiff,

   v.

INDEPENDENT HEALTH ASSOCIATION, INC.,
INDEPENDENT HEALTH CORPORATION,
DXID, LLC, and
ELIZABETH GAFFNEY,

       Defendants/Third-Party Plaintiffs,

   v.

ACE AMERICAN INS. CO.,

       Third-Party Defendant.

**DECISION AND ORDER**
22-CV-462S

## I. INTRODUCTION

In this action, Plaintiff Homeland Insurance Company of Delaware ("Homeland") seeks a declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that it has neither defense nor indemnity obligations under an insurance policy it issued to Defendants with respect to their potential liability in a pending federal *qui tam* action and related arbitration. Third-Party Defendant Ace American Insurance Company ("Ace") ultimately seeks a similar determination as it relates to an excess liability insurance policy it issued to Defendants.

Presently before this Court is Defendants' motion for a partial stay of proceedings and discovery pending resolution of the *qui tam* action. (Docket Nos. 35, 40-42.) For the following reasons, Defendants' motion is denied.

1

## II. BACKGROUND

In August 2013, Homeland underwrote and issued a primary Managed Care Errors & Omissions Policy to Defendant Independent Health Association, Inc., under which Defendants Independent Health Corporation, DxID, LLC, and Elizabeth Gaffney were also insureds.  (Complaint, Docket No. 1, ¶¶ 1, 13.)  One year later, Homeland underwrote and issued a renewal of the policy.  (Id. ¶ 14.)  The policy limits liability to $10 million per claim and $10 million in the aggregate, with a $1 million self-insured retention.  (Id. ¶ 15.)  The operative coverage period ran from August 1, 2013, to August 1, 2015.  (Id.)

In October 2014, Ace issued an Excess Liability Insurance Policy to Independent Health Corporation.  (Third-party Complaint, Docket No. 19 (pp. 22-27), ¶ 11.)  Each defendant is an insured under the policy, which provides aggregate limits of $10 million in excess of the primary limits of $10 million provided by the primary Homeland policy above.  (Id. ¶¶ 13, 14.)  The excess liability coverage period ran from August 1, 2014, to August 1, 2015.  (Id. ¶ 12.)

Before issuance of the above policies, Defendants and others were named in a federal *qui tam* suit that now serves as the underlying action in this matter.  See U.S. *ex rel.* Ross v. Indep. Health Corp., et al., 12-CV-299S.  In April 2012, Relator Teresa Ross sued Defendants on behalf of the United States for violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729, et seq.  After a lengthy period of investigation, the government intervened and filed its Complaint-in-Intervention seeking damages under the FCA and restitution under common law on September 13, 2021.

Through its Complaint-in-Intervention, the government maintains that Defendants defrauded the federal Medicare program by submitting false and inflated claims for reimbursement.  In particular, the government alleges that Defendants fraudulently collected and retained higher payments from the Medicare program than they were entitled to by submitting inaccurate and unsupported diagnosis codes, resulting in Defendants sharing millions of dollars in increased payments.[1]

The government asserts six claims in the underlying action.  The first four fall under the FCA.  First, the government alleges that Defendants knowingly presented false or fraudulent claims for payment or approval resulting in inflated Medicare reimbursements to which they were not entitled.  Second, the government alleges that Defendants knowingly made and used false records and statements material to false or fraudulent claims resulting in inflated reimbursements.  Third, the government alleges that Defendants knowingly made and used false records and statements material to an obligation to pay or transmit money or property to the government by creating false records and making false statements relating to their failure to delete codes for unsupported diagnoses or to repay Medicare overpayments to which they were not entitled.  Fourth, the government alleges that Defendants knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the government by failing to delete codes for unsupported diagnoses or otherwise repay Medicare for overpayments.

---

1 The government's allegations are further detailed in United States ex rel. Ross v. Ind. Health Corp., 12-CV-299S, 2023 WL 24055 (W.D.N.Y. Jan. 3, 2023).

3

The government's final two claims in the underlying action are common law causes of action.  First, the government alleges that Medicare paid monies to Defendants directly or indirectly as a result of its mistaken understanding that Defendants had submitted valid claims based on valid risk-adjustment diagnoses. Second, the government alleges that Defendants were unjustly enriched at the expense of the United States by engaging in the conduct alleged throughout the Complaint-in-Intervention.

Also at issue here is an arbitration proceeding that arose out of the underlying action.  In November 2020, one of the named defendants in the underlying action, Group Health Cooperative ("GHC"), agreed to settle the government's claims for in excess of $6 million.  Approximately one year later, GHC filed an arbitration complaint against Defendants, seeking to hold them liable for GHC's settlement payment and other expenditures.  The parties report that the arbitration was resolved confidentially in July 2022.

Homeland alleges that Defendants have invoked the policy and submitted defense costs related to legal fees and expenses incurred in the underlying action and the GHC arbitration.  (Complaint, ¶ 49.)  The submitted costs are $1,374,875, as of May 2022.  (Id. ¶ 50.)  Homeland has not paid defense costs or indemnity to Defendants and instead seeks a declaration that it has no obligation to do so.  (Id. ¶¶ 2, 4, 52.)

Defendants now seek a stay of all proceedings and discovery that is not strictly related to Homeland's and Ace's obligations to defend them in the underlying action and arbitration pursuant to the respective policies.  They argue that such a partial stay is

warranted for three reasons.  First, Defendants fear that Homeland and Ace will engage in prejudicial discovery and litigation of facts that overlap with the issues in the underlying action, thus prejudicing their underlying defense.  Second, Defendants maintain that judicial economy will be served by a stay because resolution of the underlying action will substantially narrow the scope of this action and thus avoid unnecessary discovery.  Third, Defendants maintain that the duty-to-defend issues can be resolved without discovery by simply examining the nature of the underlying action and the terms of the policy.

In opposition, Homeland and Ace contend that no stay is necessary and that granting Defendants' request would unnecessarily piecemeal this litigation and prejudice them.  They maintain that a stay is particularly unwarranted because their coverage defenses do not require discovery from Defendants that would implicate their culpability in the underlying action.  They further maintain that judicial economy will not be served because a partial stay would be unworkable and result in fragmented and duplicated litigation.  Finally, they assert that they will be prejudiced by a partial stay because they will be held in this litigation indefinitely and could be required to pay defense costs before having a full opportunity to establish that they have no coverage obligations in the first place.

### III. DISCUSSION

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. N. Am. Co., 299 U.S. 248, 254,

57 S. Ct. 163, 81 L. Ed. 153 (1936).   The exercise of this power falls to the court's judgment, "which must weigh competing interests and maintain an even balance."   Id. at 254-55.

Five factors inform the court's judgment:

(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed;

(2) the private interests of and burden on the defendants;

(3) the interests of the courts;

(4) the interests of persons not parties to the civil litigation; and

(5) the public interest.

Laser Spa of Rochester, LLC v. Erie Ins. Co., 20-cv-6308-FPG, 2020 WL 5898640, at *1 (W.D.N.Y. Oct. 5, 2020) (citations omitted).   "In balancing these factors on a case-by-case basis, the central focus is to avoid prejudice."   HMT, Inc. v. Bell BCI Co., No. 06-CV-6193T, 2007 WL 295328, at *2 (W.D.N.Y. Jan. 30, 2007) (citation omitted).

"The proponent of a stay bears the burden of establishing its need."   Clinton v. Jones, 520 U.S. 681, 708, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997).   That is, the proponent "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one [sic] else."   Landis, 299 U.S. at 255.

Having considered the relevant factors, this Court finds that Defendants have failed to make out the clear case of hardship or inequity contemplated in Landis.   The

thrust of Defendants' argument is that Homeland and Ace will seek discovery on issues that overlap with liability-related issues in the underlying action, resulting in prejudice and inequity.  In particular, they maintain that Homeland's pursuit of discovery related to the knowledge- and intent-based policy exclusions could (at least in theory) result in the type of discovery that the government would seek to prove knowledge and intent in the underlying action.  This Court is not convinced.

The knowledge-based exclusion (Exclusion D) excludes coverage for any claim, damages, or claim expenses arising out of any actual or alleged act, error, or omission, if Defendants knew or should reasonably have known that the act, error, or omission would give rise to a claim.  (Complaint, ¶ 46.)  The intent-based exclusion (Exclusion A) excludes coverage for intentionally fraudulent acts, errors, or omissions that are established by a final adjudication.  (Id. ¶ 45.)

In contrast, the FCA imposes liability on any person who, *inter alia*, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; conspires [to violate the FCA]; . . . or knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government."  31 U.S.C. § 3729 (a)(1)(A)-(C), (G).  To prove knowledge, it must be established that an FCA defendant had actual knowledge or acted in deliberate ignorance or reckless disregard of the truth or falsity of

7

the information.  <u>See</u> 31 U.S.C. § 3729 (b)(1)(A).

With little explanation, Defendants contend that Exclusions D and A "turn on facts squarely at issue in the Underlying Action."  Memorandum of Law, Docket No. 35-1, p. 14.  But as set out above, the knowledge at issue in Exclusion D principally concerns the scope and timing of Defendants' knowledge of the *qui tam* action, not the knowledge required to establish an FCA violation.  And the fraud exclusion depends on a final adjudication in the underlying action, not demonstration of fraud here.  Thus, there is insubstantial overlap of facts in the two cases, which weighs against imposing a stay.[2] <u>See, e.g.</u>, <u>Am. Empire Surplus Lines Ins. Co. v. Disano Demolition Co., Inc.</u>, 18 CV 5047 (NGG)(CLP), 2020 WL 7211286, at *9 (E.D.N.Y. Nov. 12, 2020) (Report and Recommendation) (declining to recommend a stay where the insurer "seeks to disclaim all liability on the Policies on the basis of conduct unrelated to the underlying . . . suit"), <u>adopted by</u>, 2020 WL 7186793 (E.D.N.Y. Dec. 7, 2020).

True, some discovery requests could arguably tread on issues in the underlying action, but Defendants make an insufficient showing that those limited circumstances— just two are cited—warrant the extensive partial stay they request.  Moreover, there is no showing that such objections cannot be made and resolved on a request-by-request basis, particularly given Homeland's representation that it does not intend to pursue

---

2 Because the issues in the two actions do not substantially overlap, Defendants' cases are not instructive.  <u>See, e.g.</u>, <u>State Farm Fire & Cas. Co. v. B.T.B., Inc.</u>, No. CV-F-10-1990 LJO DJB, 2011 WL 284974, at *9 (E.D. Cal. Jan. 26, 2011) (granting stay where "[f]actual issues in the underlying action and declaratory relief action are overlapping"); <u>Am. Motorists Ins. Co. v. Philip Carey Corp.</u>, 482 F. Supp. 711, 715 (S.D.N.Y. 1980) (granting stay in part because the "very claim in this action is one of those listed in the [underlying] case").

discovery that would prejudice Defendants in the *qui tam* suit.[3] <u>See</u> Memorandum of Law, Docket No. 40, p. 12 ("discovery concerning whether or not Defendants violated the [FCA] would offer no benefit to Homeland in pursuing its coverage defenses here"); p. 15 ("Homeland has no interest in taking discovery in this litigation that would establish such knowledge [under the FCA] on the part of Defendants."); p. 16 ("Homeland has no motive to *prove* Defendants' fraud in this coverage action, as the merits of the fraud allegations are irrelevant." (emphasis in original)).

Relatedly, Defendants fail to establish prejudice in the sense that Homeland or Ace will "seek to do the work of the Government" in the underlying action through their discovery requests.  Memorandum of Law, Docket No. 35-1, p. 15; <u>see</u> <u>State Farm</u>, 2011 WL 284974, at 7 (discussing prejudice to an insured "when it is forced to fight a two-front war, doing battle with the plaintiffs in the third party litigation while at the same time devoting its money and its human resources to litigating coverage issues with its carrier" (internal quotations and citation omitted)).   The insurers disclaim any such intention, and given that the two actions do not substantially overlap, the risk of prejudice appears overstated.   This is therefore not a situation where the insurers "would be acting at cross-purposes to the interests of its insured in the underlying litigation" by seeking to prove applicable exclusions.  <u>Travelers Prop. Cas. Co. of Am. v. N.Y. Radiation Therapy Mgmt. Servs., Inc.</u>, No. 09 Civ. 694 (NRB), 2009 WL 285069, at (S.D.N.Y. Aug. 31, 2009).

---

3 Homeland also suggests that any objections be resolved on a request-by-request basis.  <u>See</u> Memorandum of Law, Docket No. 40, p. 14 n.3 ("If Defendants believe that revealing the information sought in these two requests would harm them in the *Qui Tam* Action, the solution is not a stay of the case, but an objection to the two particular document requests at issue on that basis.").

This Court is further unconvinced that a partial stay would conserve resources. Since the issues do not substantially overlap, there is diminished risk of duplicating resources. And even under Defendants' proposal, this litigation would continue in part, requiring time and resources in any event. Complicating the progression of this case by creating piecemeal litigation, where the lines of the stay may be unavoidably blurred and further litigated, does not, in this Court's view, serve the interests of judicial economy here. This consideration therefore weighs against a partial stay.

Moreover, this Court finds that the insurers would be prejudiced by a partial stay. Given the nature of the underlying action, a partial stay here would likely result in significant delay before the coverage issues, none of which will be determined in the underlying action, would be reached. See Berkley Custom Ins. Managers. v. York Risk Svcs. Grp., Inc., 1:18-cv-9297 (PAC), 2020 WL 359941, at *2 (S.D.N.Y. Jan. 22, 2020) (finding prejudice where a stay would cause delay while a "separate question" is resolved in the underlying litigation); Am. Steamship Owners Mut. Prot. & Indem. Assoc., Inc. v. LeFarge N. Am., Inc., 474 F. Supp. 2d 474 (S.D.N.Y. 2007) (denying stay where insurer "would have to wait years for a decision," which is "precisely the sort of substantial prejudice to a party that the law seeks to avoid"). This weighs against a partial stay.

Finally, this Court finds that the public interest is served by the expeditious resolution of the parties' dispute.

Accordingly, having weighed all relevant factors, this Court finds that a partial stay in this case is unwarranted. Defendants' request will therefore be denied.

10

**IV. CONCLUSION**

For the reasons stated above, Defendants' motion for a partial stay will be denied.

**V.  ORDER**

IT HEREBY IS ORDERED, that Defendants' Motion for a Partial Stay (Docket No. 35) is DENIED.

SO ORDERED.


Dated:        August 15, 2023
              Buffalo, New York


                                            s/William M. Skretny
                                           WILLIAM M. SKRETNY
                                           United States District Judge

11