**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**HOMELAND INS. CO. OF**
**DELAWARE,**

                              **Plaintiff,**                    **22-CV-00462-WMS-HKS**

**v.**

**INDEPENDENT HEALTH ASS'N, INC.,**
**INDEPENDENT HEALTH CORP., DXID, LLC,**
**AND ELIZABETH GAFFNEY,**

                              **Defendants/Third-Party**
                              **Plaintiffs,**

**v.**

**ACE AMERICAN INS. CO.,**

                              **Third-Party Defendant.**

---

## DECISION AND ORDER

        This case was referred to the undersigned by the Hon. William M. Skretny,

pursuant to 28 U.S.C. § 636(b)(1)(A) for all pretrial matters. Dkt. #20.


## INTRODUCTION

        This is a declaratory judgment action in which plaintiff Homeland Insurance

Company of Delaware ("Homeland") seeks a declaration that it has no defense or

indemnity obligations arising out of an insurance policy it issued to defendant Independent

Health Association, Inc. ("IHA") as to claims asserted against IHA and other insureds[1] in

---

[1] Defendants Independent Health Corporation ("IHC"), DxID, LLC, and Elizabeth Gaffney
("Gaffney") were also insureds under the Homeland policy. IHC  and DxID are or were subsidiaries
of IHA. Dkt. #1, ¶¶ 7-8. Gaffney was the Chief Executive Officer of DxID. Dkt. #1, ¶ 9.

a federal *qui tam* action and related arbitration. Dkt. #1, ¶¶ 1-3. Third-party defendant Ace American Insurance Company ("Ace") seeks a similar determination as to an excess insurance policy it issued to defendants. Dkt. #30.

Currently before the Court are Homeland's motion to compel and motion to settle an order, as well as a joint status report that the Court ordered the parties to file. Dkt. ##45, 52, 57. For the following reasons, Homeland's motion to compel will be granted in part and taken under advisement in part, and the motion to settle an order will be taken under advisement pending the parties' filing of an amended proposed case management order.

## **BACKGROUND**

The facts alleged in this matter have been set forth in a previous Decision and Order by the presiding district court judge, Dkt. #51, and they are incorporated here by reference.

Briefly summarized, Homeland and Ace seek declarations that they owe no duty to defend or indemnify defendants relating to an underlying *qui tam* action pending in this Court, *United States ex rel. Ross v. Indep. Health Corp.*, Case No. 12-CV-299-WMS, and a related arbitration that was settled in July 2022. Dkt. #51, p. 4.

In the *qui tam* action, "the government maintains that Defendants defrauded the federal Medicare program by submitting false and inflated claims for reimbursement."

Dkt. #51, p. 3. The government's complaint-in-intervention alleges claims under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729, *et seq.*, and common law. Dkt. #51, p. 2. The arbitration arose, in part, out of the same allegations. Dkt. #51, p. 4.

Homeland maintains that several exclusions in its policy[2] preclude coverage for the claims against defendants in those actions: (1) Exclusion A ("the intent-based" exclusion), which excludes coverage for intentionally fraudulent acts that are established by a final adjudication, Dkt. #1, ¶45; (2) Exclusion D (the "knowledge-based" exclusion), which excludes coverage for any claims, damages, or claims expenses arising out of any actual or alleged act, error, or omission if, before the inception date of the policy, defendants knew or should reasonably have known that the act, error, or omission would give rise to a claim, Dkt. #1, ¶ 46; (3) Exclusion J, which excludes coverage for any claims, damages, or claim expenses brought by, or on the behalf of, certain governmental or regulatory bodies or agencies, Dkt. #1, ¶ 47; and (4) Exclusion K, which excludes coverage for certain claims, damages, or claims expenses for liabilities arising under any indemnification agreement, Dkt. #1, ¶ 48.

In December 2022, Homeland served document requests and interrogatories on defendants. Dkt. ##45-3, 45-4. As discussed more specifically below, the requests seek information relevant to the policy exclusions, particularly Exclusion D. That is, many of the requests concern what defendants knew—prior to the issuance of

---

[2] The Homeland policy was issued on August 1, 2013 and renewed on August 1, 2014. Dkt. #1, ¶¶ 13-14.

the Homeland policy on August 1, 2013—about the government's investigation into their Medicare billing practices and the potential *qui tam* action.

On January 18, 2023, defendants filed a motion for partial stay of this matter pending resolution of the *qui tam* case. Dkt. #35. Defendants argued that discovery in this case would overlap with liability-related issues in the *qui tam* action and would thus be prejudicial. That motion became ripe on February 22, 2023. Dkt. #42.[3]

In the meantime, on February 10, 2023, defendants served their responses and objections to Homeland's discovery requests. Dkt. ##45-5, 45-6.

Defendants objected to many of these requests on the grounds that they are "premature, prejudicial, and potentially unnecessary to the extent they seek information related to matters that are contested in and potentially or actually relevant or actually relevant to the factual allegations and legal claims asserted against the Policyholders in the Government Action." Dkt. 45-6, p. 6. As noted, this was the same argument advanced in defendants' motion to stay.

In March 2023, counsel met and conferred regarding defendants' discovery responses. Dkt. #45-2, ¶8. Defendants' counsel did not withdraw their objections but stated that they would "take another look" at their responses. Dkt. #45-2, ¶ 10. On March

---

[3] Because only non-dispositive pretrial matters had been referred to the undersigned, the motion to stay fell within the presiding district court judge's authority. Dkt. #20.

27, 2023, defendants served supplemental responses and objections to Homeland's discovery requests. Dkt. ##45-10, 45-11.

As set forth in the attached appendix[4], in response to fourteen interrogatories, defendants refused to answer twelve and gave only partial responses to two. As to the twenty-six document requests, defendants agreed to produce documents as to six requests; they agreed to partial production as to four requests; and they refused to produce any documents as to the remaining sixteen requests.

On April 14, 2023, the parties filed a proposed protective order, Dkt. #43, which the Court entered on April 18, 2023. Dkt. #44.

On June 1, 2023, plaintiff filed the instant motion to compel asking the Court to order defendants to answer plaintiff's Interrogatories 1-14 and to produce documents responsive to plaintiff's requests 4, 5, 8-16, and 18-26. Dkt. #45. Defendants filed their memorandum in opposition on June 29, 2023, relying on—and specifically incorporating—the arguments advanced in their still-pending motion to stay. Dkt. #47, *passim*.

On August 15, 2023, Judge William M. Skretny issued a Decision and Order denying defendants' motion to stay. Dkt. #51. Judge Skretny rejected defendants' argument that "Homeland's pursuit of discovery related to the knowledge- and intent-

---

[4] This appendix reflects the status of defendants' discovery responses as of March 27, 2023; it does not reflect more recent changes, which are discussed below.

based policy exclusions could (at least in theory) result in the type of discovery that the government would seek to prove knowledge and intent in the under lying action." Dkt. #51, p. 7. Judge Skretny explained:

> Defendants contend that Exclusions D and A 'turn on facts squarely at issue in the Underlying Action.' . . . **But as set out above, the knowledge at issue in Exclusion D principally concerns the scope and timing of Defendants' knowledge of the *qui tam* action, not the knowledge required to establish a FCA violation. And the fraud exception depends on a final adjudication in the underlying action, not demonstration of fraud here.** Thus, there is insubstantial overlap of facts in the two cases, which weighs against imposing a stay.

Dkt. #51, p. 8 (emphasis added).

Finally, Judge Skretny observed that, to the extent that any discovery request in this case "could arguably tread on issues in the underlying action," such objections could be resolved on a request-by request basis." Dkt. #51, p. 8.

On January 29, 2024, the parties filed a joint status report advising the Court of developments that have occurred since Judge Skretny denied defendants' motion to stay. Dkt. #57. While it appears that the parties have made some progress on their discovery dispute, substantial differences remain.

**DISCUSSION AND ANALYSIS**

<u>**Legal Standards**</u>

Pursuant to Fed. R. Civ. P. 26, parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

"Information is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Duhaney v. TransUnion, LLC*, 23-CV-04066 (NJC) (JMW), 2024 WL 85074, at *1 (E.D.N.Y. Jan. 8, 2024) (citation and internal quotation marks omitted). Relevance, "for purposes of discovery, is an extremely broad concept." *Carlyle Aviation Mgmt. Ltd. v. Frontier Airlines, Inc.*, 23 Civ. 4774 (PAE), 2023 WL 8472725, at *1 (S.D.N.Y. Dec. 7, 2023) (citation and internal quotation marks omitted).

"Once any possibility of relevance sufficient to warrant discovery is shown, the burden shifts to the party opposing discovery to show the discovery is improper." *Rhodes v. Phoenix Arms*, 1:20-CV-267 (GTS/CFH), 2022 WL 2079088, at *2 (June 9, 2022) (citation and internal quotation marks omitted). "Generally, discovery is only limited when sought in bad faith, to harass or oppress the party subject to it, [or] when it is irrelevant or privileged." *Id.*

**Interrogatories**

***Interrogatories 1-12***

As set forth in the appendix, Interrogatories 1 through 12 seek information that is clearly relevant to Exclusion D of the policy in question, *i.e.,* "the scope and timing of Defendants' knowledge of the *qui tam* action." Dkt. #51, p. 8. These requests seek to determine what defendants knew about the government's investigation and, importantly, *when* they learned facts that might trigger this exclusion.

Defendants opposed the motion to compel as to these interrogatories on the grounds that they seek discovery related to the underlying *qui tam* case. Dkt. #47, p. 21. This argument—which Judge Skretny expressly rejected in denying defendants' motion to stay—is without merit. Defendants' knowledge as to the government's investigation into their billing practices and the potential *qui tam* case, which is relevant to Exclusion D, is distinct from their alleged knowledge in submitting false or fraudulent claims to the government for purposes of the FCA claims in the underlying matter.

Defendants also asserted that they need not respond to these interrogatories because defendants did not possess the knowledge required to trigger Exclusion D. Dkt. #47, pp. 21-22. Such a circular, self-serving assertion is obviously no shield against discovery to which plaintiff is entitled to explore the merits of its coverage defenses. *See, e.g., Bennett v. Metro-North R.R. Co.*, 3:19-CV-00081, 2020 WL 2113589, at *2 (D. Conn. May 4, 2020) (rejecting defendant's attempt to have the Court define the

scope of discovery based on defendant's view of the merits of the case, noting "[t]hat's not how this works.").

In their recent joint status report, the parties differ as to which of these twelve requests remain disputed. As to interrogatories 5 and 6, plaintiff states that defendants have provided only "partial" responses and that these two requests remain subject to the motion to compel. Dkt. #57, p. 3. Defendants do not contest this characterization of their responses, stating only that they provided "detailed" responses to interrogatories 5 and 6. Dkt. #57, p. 3. Notably, defendants do *not* list interrogatories 5 and 6 as among those to which they still assert privilege or vagueness objections.

Therefore, to the extent that defendants have not provided complete responses to interrogatories 5 and 6, they are ordered to do so promptly.

The parties do agree that interrogatories 7 and 8 are still disputed. Dkt. #57, p. 3. Defendants previously asserted two specific objections—relevance and prejudicial overlap with the *qui tam* case—to interrogatory 7, which seeks information concerning the circumstances under which defendants learned that GHC had received a subpoena in connection with the *qui tam* action. Dkt. #45-6, p.12.

Defendants' relevance objection is not well founded because interrogatory 7 pertains to knowledge of defendants that might trigger Exclusion D of the policy in question. Interrogatory 8 is relevant for the same reason. Second, as already noted,

defendants' objection as to overlap with the *qui tam* case lacks merit.

Therefore, defendants shall promptly respond to interrogatories 7 and 8. To the extent that defendants assert the attorney-privilege defense as to interrogatory 8, they shall do so in compliance with Fed. R. Civ. P. Fed. R. Civ. P. 26(b)(5) and Loc. R. Civ. P. 26(d).

Next, plaintiff states that defendants have not answered interrogatory 10 and have provided only a partial response to interrogatory 9. Dkt. #57 p. 3. Defendants state that they responded to these two requests by referring to their response to interrogatory 1. Dkt. #57, p. 3. This is improper. *See Trueman v. N.Y. State Canal Corp.*, Civ. No. 1:09-CV-049 (LEK/RFT), 2010 WL 681341, at *2-3 (N.D.N.Y. Feb. 24, 2010) (noting that, under Fed. R. Civ. P. 33, each interrogatory must be answered "separately and fully," and responses that refer to answers to other interrogatories are "improper and thus unresponsive").

Therefore, defendants shall promptly provide separate responses to interrogatories 9 and 10.

### *Interrogatory 13*

Finally, the parties also agree that interrogatory 13 remains in dispute.

This request seeks information that is relevant to Exclusion J of the

Homeland policy, which excludes claims brought by governmental bodies or agencies, except where the body or agency is the payor for the managed care or healthcare service provided by defendants. Dkt. #1-1, pp. 38-39. Interrogatory 13 seeks information identifying the sources of payments to DxID, which is directly relevant to the "government-payor" carve-out in Exclusion J.

Therefore, defendants shall promptly respond to interrogatory 13. To the extent that defendants assert the attorney-privilege defense as to this request, they shall do so in compliance with Fed. R. Civ. P. Fed. R. Civ. P. 26(b)(5) and Loc. R. Civ. P. 26(d).

For these reasons, the Court will grant plaintiff's motion to compel as it pertains to these seven interrogatories.

### Document Requests

#### Requests 4, 5, 12, 14-15

These document requests mirror the above interrogatories which seek information relevant to the applicability of Exclusion D.

Notably, defendants do not contest the relevancy of these documents; rather, they assert that they object to the "timing" of such discovery as "premature" and "potentially prejudicial." Dkt. #47, p. 16. The Court has already explained why that argument is not well taken.

Document requests 4 and 5, however, raise a different issue. Request 4 seeks "all litigation hold notices issued by IHA, IHC and/or DxID, or their agents" concerning the *qui tam* action and related arbitration. Dkt. #45-5, p. 10. Request 5 seeks "all communications" concerning such litigation hold notices. Dkt. #45-5, p. 10.

Defendants argue that litigation hold notices are generally protected by the attorney-client privilege. Dkt. #47, p. 15 n.3. However, this issue is more nuanced than discussed in the parties' briefs.

It is true that "formal litigation hold notices exchanged between attorneys and their clients are privileged communications and generally immune from discovery." *Roytlender v. D. Malek Realty, LLC*, 21-cv00052(MKB)(JMW), 2022 WL 5245584, at *4 (E.D.N.Y. Oct. 6, 2022) (citations omitted). However, whether the privilege attaches to such communications is highly fact-sensitive, as thoroughly discussed in *Pearlstein v. BlackBerry Ltd.*, 13-CV-07060, 2019 WL 1259382, at *18 (S.D.N.Y. Mar. 19, 2019). The court there explained:

> [A] litigation hold, just like any other communication with counsel, may constitute or contain legal advice and work product. There is no reason why a litigation hold memo should be *per se* excluded from protection. *Rather, the content and circumstances of its issuance, as well as the context of the litigation, will determine applicability of any privilege or work product protection.*

*Id.* at *19 (emphasis added).

Document requests 4 and 5 are broad enough that they could easily implicate both privileged and non-privileged communications, for a variety of reasons. The Court cannot make this determination on a blanket basis, without more information.

Further, it is well established that the "party withholding a document on the basis of attorney-client privilege . . . bears the burden of establishing facts to demonstrate applicability of the protective rule." *Pearlstein*, 2019 WL 1259382, at *3 (citation omitted). As noted, Fed. R. Civ. P. 26(b)(5) and Loc. R. Civ. P. 26(d) require the party withholding allegedly privileged documents to prepare and produce a privilege log.

Therefore, defendants are ordered to provide privilege logs to plaintiff promptly, in compliance with the above rules, so that plaintiff can decide whether to challenge defendants' assertions of privilege as to document requests 4 and 5. The Court will take the motion to compel under advisement as to these two requests.

Next, plaintiff states that defendants have now provided only a "limited subset" of documents in response to requests 12, 14, 15, and 18-23. Dkt. #57, p. 2. Defendants do not specifically address the bases for their responses to these requests. Dkt. #57, p. 3.

Thus, defendants are ordered to provide complete responses to requests 12, 14, 15, and 18-23 and, if they invoke the attorney-client privilege, defendants shall comply with the rules discussed above.[5]

### Requests 25 and 26

Finally, the parties cannot agree regarding document requests 25 and 26, to which defendants have refused to respond.

Document requests 25 and 26 relate to the "carve-out" component to Exclusion J, discussed above. The information sought in these requests is thus relevant and should be produced.

The Court will thus grant plaintiff's motion to compel responses to document requests 25 and 26. Should defendants invoke the attorney-client privilege as to any responsive documents, they shall comply with the rules discussed above.

### Case Schedule and Fees

Previously, the parties were unable to agree on a revised case management order, but they now concur that all prior proposals have been mooted by the passage of time. Dkt. #57. Plaintiff and defendants also sought their attorneys' fees and costs in relation to the scheduling dispute.

---

[5] The Court notes that document request 15 could, as Judge Skretny said, "arguably tread on issues in the underlying action." Dkt. #51, p. 8. However, the parties have in place a protective order with strict confidentiality protections which may address such concerns. Dkt. ## 43, 44.

The Court will order the parties to confer and file a new proposed case management order. The Court will then determine whether a scheduling conference should be held.

## CONCLUSION

Consistent with this decision, plaintiff's motion to compel (Dkt. #45) is granted in part and taken under advisement in part. Plaintiff's motion to settle (Dkt. #52) is taken under advisement.

The parties shall confer and file a proposed amended case management order **on or before February 12, 2024**.

**SO ORDERED.**

DATED:      Buffalo, New York
            February 1, 2024

                         _s/ H. Kenneth Schroeder, Jr._
                         **H. KENNETH SCHROEDER, JR.**
                         **United States Magistrate Judge**

**Appendix**

| Request | Information Provided in Response | Objection(s) |
|---|---|---|
| Interrogatory No. 1<br><br>Provide the date on which you first learned of the Government Action and how you were made aware of it (e.g. letter, phone, email, etc.)? | None | • Relevance<br>• Seeks information related to *qui tam* matter |
| Interrogatory No. 2<br><br>Provide the date on which you first retained counsel in connection with the Government Action. | None | • Relevance<br>• Attorney-client privilege<br>• Seeks information related to *qui tam* matter |
| Interrogatory No. 3<br><br>Identify all law firms and/or lawyers that have represented IHA, IHC and/or DxID in connection with the Government Action and the dates during which such law firms have represented these parties. | Defendants provided the names of five law firms that have represented them in connection with the *qui tam* action, but did not provide dates or names of attorneys. | • Relevance<br>• Attorney-client privilege<br>• Overly broad/vague<br>• Seeks information related to *qui tam* matter |
| Interrogatory No. 4<br><br>Identify by name and title all employees or agents of IHA, IHC and/or DxID that were interviewed by or communicated with the Government in connection with the Government Action, including, without limitation, shareholders, members, | None | • Relevance<br>• Attorney-client privilege<br>• Overly broad/vague<br>• Seeks information related to *qui tam* matter |

| officers, directors and managers, and provide the dates of each such interview or communication. | | |
|---|---|---|
| **Interrogatory No. 5**<br><br>Identify each of the dates upon which any of the Defendants provided any documents or information to the Government in connection with the Government Action, the identity of the party making the production or disclosure and the volume of documents produced. | None | • Relevance<br>• Overly broad/vague<br>• Seeks information related to *qui tam* matter |
| **Interrogatory No. 6**<br><br>Identify by date, location and attendees [of] all meetings regarding the Government Action – either in-person, via videoconference, telephonic, or otherwise – between Defendants or any of their representatives and the Government. | None | • Relevance<br>• Attorney-client privilege<br>• Overly broad/vague<br>• Seeks information related to *qui tam* matter |
| **Interrogatory No. 7**<br><br>On what date, and under what circumstances, did Defendants learn that GHC[6] had received a subpoena from the Government in connection with the Government Action? | None | • Relevance<br>• Seeks information related to *qui tam* matter |

---

[6] Group Healthcare Cooperative ("GHC") was a former customer of DxID, LLC that had contracted with it for Medicare Advantage-related coding services. Dkt. #1, ¶ 27. GHC was named as a defendant in the *qui tam* action but settled with the government in November 2020. Dkt. #1, ¶ 35.

| | | |
|---|---|---|
| **Interrogatory No. 8**<br><br>On what date, and under what circumstances, did Defendants learn that the Government had interviewed GHC personnel in connection with the Government Action? | None | • Relevance<br>• Attorney-client privilege<br>• Seeks information related to *qui tam* matter |
| **Interrogatory No. 9**<br><br>Identify the Person(s) who first informed IHA as to the existence of, or possible existence of, a qui tam action filed against it. | None | • Relevance<br>• Attorney-client privilege<br>• Seeks information related to *qui tam* matter |
| **Interrogatory No. 10**<br><br>On what date, and under what circumstances, did the Government direct or suggest that IHA should not disclose the possible existence of a qui tam lawsuit to any third parties, as alleged in Paragraph 26 of Defendants' counterclaim? | None | • Relevance<br>• Attorney-client privilege<br>• Seeks information related to *qui tam* matter |
| **Interrogatory No. 11**<br><br>Identify by date, sender and recipient(s) each litigation hold notice issued in connection with the Government Action and/or GHC Arbitration. | None | • Relevance<br>• Attorney-client privilege<br>• Seeks information related to *qui tam* matter |
| **Interrogatory No. 12**<br><br>Identify all instances in which | | • Relevance |

| | | |
|---|---|---|
| Defendants reported the Government Action and/or GHC Arbitration to any insurance carrier, including the policy under which it was reported and the date of the reporting. | By supplemental response, defendants state they will provide such information only as it pertains to Homeland and Ace. | • Seeks information related to *qui tam* matter |
| **Interrogatory No. 13**<br><br>Identify all Persons that provided payments to DxID for the services that DxID provided, including, without limitation, to IHA, IHC and GHC, and, for each such Person, the dates on which such payments were made. | None | • Relevance<br>• Attorney-client privilege<br>• Overly broad/vague<br>• Seeks information related to *qui tam* matter |
| **Interrogatory No. 14**<br><br>State whether CMS[7] made any direct payments to DxID, and, if so, set forth the dates on which such payments were made and the purpose of such payments. | None | • Relevance<br>• Attorney-client privilege<br>• Vague<br>• Seeks information related to *qui tam* matter |
| **Document Request 1**<br><br>The Executive Risk Indemnity Inc. Managed Care Directors and Officers Liability Policy from August 1, 2012 to August 1, 2013, referenced in Paragraph 24 of Defendants' Answer. | Copy of policy requested | • General objections |

---

[7] "CMS" denotes the Centers for Medicare and Medicaid Services.  Dkt. #1, ¶ 21.

| | | |
|---|---|---|
| **Document Request 2**<br><br>All commercial insurance policies that any Defendant had in place at any time from August 1, 2012 through August 1, 2013, or that otherwise cover any part of such time period, including, without limitation, any Errors & Omission policies with Darwin and/or Ace American. | Copies of policies requested | • General objections |
| **Document Request 3**<br><br>All applications for commercial insurance policies, and Communications related thereto, that any Defendant(s) submitted for coverage that would have applied at any time from August 1, 2012 through August 1, 2014, whether or not such policies were issued. | Copies of policies requested | • Overly broad<br>• Attorney-client privilege<br>• Vague |
| **Document Request 4**<br><br>All litigation hold notices issued by IHA, IHC and/or DxID, or their agents, Concerning the Government Action and/or the GHC Arbitration, or the allegations therein including, without limitation, any and all litigation hold notices issued on or before August 1, 2013 Concerning the Government Action. | None | • Vague/ambiguous<br>• Attorney-client privilege |
| **Document Request 5** | | • Vague/ambiguous |

| | None | • Attorney-client privilege |
|---|---|---|
| All Documents and Communications concerning litigation hold notices and/or the obligation of any Defendants to refrain from destruction of and/or to collect Documents. | | |
| **Document Request 6**<br><br>Documents sufficient to show all legal fees and expenses incurred in connection with the Government Action on or before August 1, 2013. | Defendants state they will provide a summary of such legal fees and expenses | • Overly broad<br>• Vague<br>• Attorney-client privilege |
| **Document Request 7**<br><br>All Communications with Darwin and/or Ace American Concerning the Government Action, including, without limitation, Communications on or before August 1, 2013. | Defendants state they will provide "responsive, non-privileged" communications | • General Objections |
| **Document Request 8**<br><br>All Communications Concerning the Government Action on or before August 1, 2013, including but not limited to internal Communications among Defendants and Communications with any of Defendants' insurance carriers. | By supplemental response, defendants state they will provide such information only as it pertains to Darwin, Homeland and Ace. | • Attorney-client privilege<br>• Seeks information related to *qui tam* matter |

| | | |
|---|---|---|
| Document Request 9<br><br>All Communications Concerning notification or reporting to Ace American, Homeland, or Darwin, or any other insurance carrier, or any agent thereof, of the Government Action and/or the GHC Arbitration. | Defendants state that they will produce such notifications from April 15, 2013. | • Overly broad<br>• Attorney-client privilege |
| Document Request 10<br><br>All Communications with the Government on or before August 1, 2013 Concerning the Government Action. | None | • Overly broad<br>• Vague<br>• Seeks information related to *qui tam* matter |
| Document Request 11<br><br>All Documents and Communications Concerning any Government subpoena of GHC in connection with the Government Action and/or the Government's interviews of GHC personnel in connection with the Government Action. | None | • Overly broad<br>• Attorney-client privilege<br>• Seeks information related to *qui tam* matter |
| Document Request 12<br><br>All transcripts, recordings, or notes from any depositions or interviews conducted by the Government in connection with the Government Action. | None | • Overly broad<br>• Attorney-client privilege<br>• Seeks information related to *qui tam* matter |
| Document Request 13<br><br>All Documents that | | |

| | | |
|---|---|---|
| Defendants provided to the Government in connection with the Government Action, including, without limitation, any presentation that DxID's counsel made to the Government in or around October 2012. | None | • Fed. R. Evid. 408<br>• Seeks information related to *qui tam* matter |
| **Document Request 14**<br><br>All Documents and Communications Concerning IHA, IHC or DxID being notified by a third party that a *qui tam* action had been commenced against one or each them. | None | • Overly broad<br>• Attorney-client privilege<br>• Seeks information related to *qui tam* matter |
| **Document Request 15**<br><br>All Documents and Communications on or before August 1, 2013 reflecting concerns by employees of IHA, IHC or DxID as to DxID's coding, chart review and/or policies and practices. | None | • Overly broad<br>• Vague<br>• Attorney-client privilege<br>• Seeks information related to *qui tam* matter |
| **Document Request 16**<br><br>All Documents and Communications on or before August 1, 2013 Concerning any review and findings as to DxID's coding, chart review and/or policies and practices including, without limitation, review and findings by any auditors. | None | • Overly broad<br>• Vague<br>• Attorney-client privilege<br>• Seeks information related to *qui tam* matter |

| | | |
|---|---|---|
| **Document Request 17**<br><br>All Documents Concerning any monetary demand that GHC made on one or more of the Defendants. | Defendants state that, subject to a protective order, they will produce such communications between and among defendants and Homeland or Ace. | • Overly broad<br>• Vague<br>• Attorney-client privilege<br>• Seeks information related to *qui tam* matter |
| **Document Request 18**<br><br>All Documents Concerning any allegation by GHC that DxID had breached the indemnification provision set forth in Paragraph 8 of the 2011 Client Service Provider Agreement or any other indemnification obligation set forth therein. | Defendants state that, subject to a protective order, they will produce GHC's demand for arbitration and notice of claim and DxID's answer thereto. | • Overly broad<br>• Attorney-client privilege<br>• Seeks information related to *qui tam* matter |
| **Document Request 19**<br><br>All Documents concerning whether IHA, IHC and/or Gaffney were properly named as parties to the GHC Arbitration. | None | • Overly broad<br>• Attorney-client privilege<br>• Seeks information related to *qui tam* matter |
| **Document Request 20**<br><br>All Documents exchanged between the parties to the GHC Arbitration, or with the arbitrator in the GHC Arbitration. | None | • Overly broad<br>• Attorney-client privilege<br>• Seeks information related to *qui tam* matter |
| **Document Request 21** | | |

| | | |
|---|---|---|
| All Documents and Communications Concerning the statute of limitations for any claims asserted by GHC in connection with the GHC Arbitration. | None | - Overly broad<br>- Attorney-client privilege<br>- Seeks information related to *qui tam* matter |
| **Document Request 22**<br><br>All Documents and Communications Concerning the agreement in principle, or alleged agreement in principle, reached on or around July 25, 2022 between Defendants and GHC. | None | - Overly broad<br>- Vague<br>- Attorney-client privilege<br>- Seeks information related to *qui tam* matter |
| **Document Request 23**<br><br>All Documents Concerning any settlement discussions between GHC and Defendants. | None | - Overly broad<br>- Attorney-client privilege<br>- Seeks information related to *qui tam* matter |
| **Document Request 24**<br><br>Any and all settlement agreements between GHC and Defendants. | Defendants state that, subject to a protective order, they will produce a copy of the settlement agreement between defendants and GHC dated September 23, 2022. | - Overly broad<br>- Attorney-client privilege<br>- Seeks information related to *qui tam* matter |
| **Document Request 25**<br><br>All contracts or agreements between DxID and any of its | None | - Overly broad<br>- Vague |

| customers. | | · Seeks information related to *qui tam* matter |
| --- | --- | --- |
| **Document Request 26**<br><br>Documents sufficient to show the payment arrangements that DxID had with each of its customers. | None | · Overly broad<br>· Vague<br>· Attorney-client privilege<br>· Seeks information related to *qui tam* matter |