**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**HOMELAND INS. CO. OF**
**DELAWARE,**

                       **Plaintiff,**                   **22-CV-00462-WMS-HKS**

**v.**

**INDEPENDENT HEALTH ASS'N, INC.,**
**INDEPENDENT HEALTH CORP., DXID, LLC,**
**AND ELIZABETH GAFFNEY,**

                       **Defendants/Third-Party**
                       **Plaintiffs,**

**v.**

**ACE AMERICAN INS. CO.,**

                       **Third-Party Defendant.**

## DECISION AND ORDER

This case was referred to the undersigned by the Hon. William M. Skretny, pursuant to 28 U.S.C. § 636(b)(1)(A), for all pretrial matters. Dkt. #20. The case is currently assigned to the Hon. John L. Sinatra. Dkt. #76.

## INTRODUCTION

This is a declaratory judgment action in which plaintiff Homeland Insurance Company of Delaware ("Homeland") seeks a declaration that it has no defense or indemnity obligations arising out of an insurance policy it issued to defendant Independent

~ 1 ~

Health Association, Inc. ("IHA") as to claims asserted against IHA and other insureds[1] in a federal *qui tam* action and related arbitration. Dkt. #1, ¶¶ 1-3. Third-party defendant Ace American Insurance Company ("Ace") seeks a similar determination as to its indemnity obligations under an excess insurance policy it issued to defendants. Dkt. #30.

Currently before the Court are Homeland's second motion to compel, Dkt. #61, Ace's motion to compel, Dkt. #66, and Homeland's motion for an extension of time to complete discovery. Dkt. #74.[2]

## BACKGROUND

The facts alleged in this matter have been set forth in a previous Decision and Order by the then-presiding district court judge, Dkt. #51, as well as a prior Decision and Order by the undersigned. Dkt. 58. Those decisions are incorporated here.

Briefly, Homeland and Ace seek declarations that they owe no duty to defend or indemnify defendants relating to an underlying *qui tam* action pending in this Court, *United States ex rel. Ross v. Indep. Health Corp.*, Case No. 12-CV-299-WMS, and a related arbitration that was settled in July 2022. Dkt. #51, p. 4.

---

[1] Defendants Independent Health Corporation ("IHC"), DxID, LLC, and Elizabeth Gaffney ("Gaffney") were also insureds under the Homeland policy. IHC and DxID are or were subsidiaries of IHA. Dkt. #1, ¶¶ 7-8. Gaffney was the Chief Executive Officer of DxID. Dkt. #1, ¶ 9.

[2] The motion for an extension of the discovery deadlines is joined by all parties. Dkt. #74, p. 1.

In the *qui tam* action, "the government maintains that Defendants defrauded the federal Medicare program by submitting false and inflated claims for reimbursement." Dkt. #51, p. 3. The government's complaint-in-intervention alleges claims under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729, *et seq.*, and common law. Dkt. #51, p. 2. The arbitration arose, in part, out of the same allegations. Dkt. #51, p. 4.

Homeland and Ace invoke several exclusions in the Homeland policy. Dkt. #58, p. 3. As relevant here, Exclusion D excludes coverage for any claims, damages, or claims expenses arising out of any actual or alleged act, error, or omission if, before the inception date of the policy[3], defendants knew or should reasonably have known that the act, error, or omission would give rise to a claim, Dkt. #1, ¶ 46.

### *The Court Grants Homeland's First Motion to Compel*

On June 1, 2023, Homeland filed a motion to compel seeking an order requiring defendants to respond to certain interrogatories and document requests. Dkt. #45.

On February 1, 2024, the Court issued a Decision and Order granting Homeland's motion in almost all respects. Dkt. #58. The Court first ordered defendants to respond to Interrogatories 1-12 and stated: "To the extent that defendants assert the attorney-client privilege defense . . ., they shall do so in compliance with Fed. R. Civ. P. 26(b)(5) and Loc. R. Civ. P. 26(d)." Dkt. #58, pp. 10-11.

---

[3] The inception date of the policy was August 1, 2013. Dkt. #1, ¶¶ 13-14.

Next, the Court took under advisement the motion regarding document requests 4 and 5 that relate to litigation hold notices. Dkt. #58, pp. 12-13. The Court noted that it could not evaluate defendants' claim that documents responsive to these requests—which are relevant to Exclusion D—were protected by the attorney-client privilege without further information, given the fact-intensive nature of that inquiry. Dkt. #58, pp. 12-13.

The Court also noted that the party invoking such a privilege bears the burden of proving its applicability, and that "Fed. R. Civ. P. 26(b)(5) and Loc. R. Civ. P. 26(d) require the party withholding allegedly privileged documents to prepare and produce a privilege log." Dkt. #58, p. 13.

The Court thus ordered defendants "to provide privilege logs to plaintiff promptly, in compliance with the above rules, so that plaintiff can decide whether to challenge defendants' assertions of privilege as to document requests 4 and 5." *Id.*

### *Defendants Produce Two Privilege Logs*

### The First Privilege Log

On April 22, 2024, defendants produced a privilege log and documents. Dkt. #61-2, ¶ 14; Dkt. #61-5. The log lists 98 separate documents dated from March 19, 2013 to September 29, 2014, reflecting communications between defendants' counsel and counsel for Group Health Cooperative ("GHC"), a former client of defendants and non-

party to this case who was—prior to a settlement—a defendant in the underlying *qui tam* action. Dkt. #51, p. 4. Defendants assert various combinations of the common-interest, attorney-work-product, and attorney-client privileges/protections as to these 98 documents. Dkt. #61-6.

The last entry on this privilege log states a date range of "July 12, 2012 to June 17, 2022," and it lists over two dozen people grouped generally as authors, recipients, or persons copied on the subject communications. Dkt. #61-5.

Those communications are described under a column titled "General Subject Matter" as: "Communications, letters, and notes of conversations between and among IH/DxID personnel and counsel for IH/DxID and its personnel providing, requesting, and reflecting legal advice, and/or reflecting common interest discussions related to government investigation." *Id.* Finally, under a column titled "Privilege Type," the entry states: "Attorney-Client Communication, Attorney Work Product, Common Interest Communication." *Id.* The entry does not state how many documents it encompasses.

Homeland's counsel sent a letter to defense counsel on April 29, 2024 discussing alleged deficiencies in defendants' productions, including the privilege log. Dkt. #61-7. Specifically, this letter stated that the single entry of an indeterminate number of documents spanning ten years failed to comply with applicable rules, and that it was unclear from that entry whether it included any litigation hold notices or related

communications which would be responsive to Homeland's document requests 4 and 5. Dkt. #61-7, pp. 3-4.

Homeland's counsel requested that defendants produce a privilege log that "separately identifies each litigation hold notice and litigation hold-related document so that Homeland can meaningfully evaluate Defendants' assertions of privilege as to documents responsive to Document Request Nos. 4 and 5." Dkt. #61-7, p. 4. The letter further requested that defendants provide a log that "provides categorical entries in a way that makes clear the number of documents for each entry, the author, recipients, subject and type of privilege claimed for each category." *Id.*

Counsel for Ace also conferred with defendants' counsel regarding their assertion of the common interest doctrine for the first 98 documents in this privilege log. Dkt. #66-5. Ace noted that defendants' amended discovery responses stated that, while counsel for IHA had learned on or about March 19, 2013 that GHC had received a subpoena from the government, defendants did not learn until October 16, 2018 that they had been named in the still-sealed *qui tam* action. Dkt. #66-5, p. 3. Ace thus questioned how defendants could have had a joint legal strategy or common interest with GHC five years earlier. *Id.*

Subsequent communications between Ace and defendants, as well as a meet and confer, did not produce agreement on this issue. Dkt. ##66-1, ¶ 12, 66-6, 66-7.

**The Second Privilege Log**

On May 6, 2024, defendants produced a second privilege log listing six emails—dated either July 27, 2012 or July 30, 2012—responsive to Homeland's document requests 4 and 5. Dkt. #61-8. The subject matter of all six emails relates to "legal advice in connection with outlined data preservation requirements." *Id.* The log asserts the attorney-client privilege and work-product doctrine as to all six documents. *Id.*

The parties met and conferred on May 21, 2024. Dkt. #61-2, ¶ 18. As to the last entry on the first privilege log, defense counsel represented that the number of documents in that category was more than 100, including many email communications, and that the documents had all been withheld in their entirety. Dkt. # 61-2, ¶ 19. Defense counsel declined to produce an amended entry providing further information about the documents. *Id.*

Defense counsel also rejected Homeland's request that defendants produce redacted copies of the six documents listed in the second privilege log. Dkt. #61-2, ¶¶ 20-21.

Homeland now brings a motion to compel challenging the sufficiency of the last entry in defendants' first privilege log and seeking the production of the six litigation-hold-related documents in the second log. Dkt. #61. Ace joins this motion. Dkt. #65.

Ace brings its own motion to compel seeking production of the 98 documents listed in defendants' first privilege log on the grounds that they are not protected by the common interest doctrine. Dkt. #66. Homeland joins this motion. Dkt. #70, p. 1.

## DISCUSSION AND ANALYSIS

### *Homeland's Motion to Compel*

### <u>First Privilege Log</u>

"When documents are withheld on the basis of privilege, the Federal Rules of Civil Procedure require the withholding party to 'describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected . . . enable other parties to assess the claim." *Aviles v. S&P Global, Inc.*, 583 F. Supp.3d 499, 502 (S.D.N.Y. 2022) (quoting Fed. R. Civ. P. 26(b)(5)(A)(ii)).

"The privilege log must establish the essential elements of the privilege, and provid[e] sufficient detail to permit a judgment as to whether the document[s] [are] at least potentially protected from disclosure." *Id.* (citations and internal quotation marks omitted).

Similarly, this Court's Local Rules state that a party asserting a claim of privilege as a basis for withholding responsive information "shall" provide specific information supporting that assertion, unless to divulge the information would cause disclosure of the allegedly privileged information. Loc. R. Civ. P. 26(d)(1)(B). For allegedly

privileged documents, the withholding party must provide: the type of document; the general subject matter of the document; the date of the document; and "such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other. Loc. R. Civ. P. 26(d)(1)(B)(i).

The Local Rules permit, and deem presumptively proper, the use of "categorical"  privilege logs—as opposed to logs listing individual documents—where a party asserts the same privilege for multiple documents. Loc. R. Civ. P. 26(d)(4). *See also In re Aenergy, S.A.*, 451 F. Supp.3d 319, 325 (S.D.N.Y. 2020) ("There is little doubt that [b]oth the Federal and Local Rules permit categorical privilege logs.") (citations and internal quotation marks omitted).

However, a party receiving a categorical privilege log may object "if the substantive information required by the rule has not been provided in a comprehensible form."  Loc. R. Civ. P. 26(d)(4). *See also In re Aenergy*, 451 F. Supp.3d at 325 (noting that the use of a categorical privilege log does not "obviate a party's obligation to provide sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure") (citations and internal quotation marks omitted).

In *Aviles v. S&P Global, Inc.*, 583 F. Supp.3d 499, 503 (S.D.N.Y. 2022), the court applied its local rule permitting categorical privilege logs, which the rule also deemed presumptively proper. The court noted: "Still, the party asserting the attorney-client privilege or work product protection bears the burden of establishing the privilege's essential elements—that the communications at issue were (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *Id.* (citations and internal quotation marks omitted).

The defendant in *Aviles* produced a categorical privilege log covering 453 documents divided into five categories with date ranges from four months to five and a half years. *Id.* The court found the categorical log deficient in several respects.

First, the court held that document categories covering time periods exceeding five years were overly broad, noting that "a date range of more than six months is generally too broad." *Id.* at 504. The Court also held that the log should identify the non-attorneys and their roles to help plaintiffs assess the privilege claims. *Id.*

The Court found, however, that the log provided sufficient descriptive detail of the categories, including descriptions such as communications "regarding potential ratings of life settlement funds other than the Lifetrade Fund" and "regarding S&P's rating of the Lifetrade Fund." *Id. See also Rekor Sys., Inc. v. Loughlin*, 19-cv-7767 (LJL), 2021 WL 5450366, at *1 (S.D.N.Y. Nov. 22, 2021) (finding sufficient specific category

descriptions in privilege log, such as "communications by Plaintiff with its counsel related to Firestorm's lease of its Roswell office;" "documents related to Rekor's counsel's efforts to review materials facilitating Rekor's sale of Secure Education Consultants;" and "four documents related to Rekor's sale of BC Management").

In contrast, courts in this Circuit find categorical privilege logs insufficient where the category descriptions are vague or generic. *See, e.g., Deutsche Bank Secs. Inc. v. Kingate Global Fund Ltd.*, 10 Civ. 10823 (ER), 2022 WL 3644822, at *8 (S.D.N.Y. Aug. 24, 2022) (finding categorical log deficient where descriptions related to multiple legal proceedings and underlying transactions spanning nine years).

For example, the *In re Aenergy* court found impermissibly vague category descriptions such as "confidential communications among GE employees and GE in-house counsel seeking or conveying legal advice relating to the on-sale contracts and the Credit Facility Agreement." *In re Aenergy, S.A.*, 451 F. Supp.3d at 326. The court noted that "GE could have included more granular and informative categories, assuming that there was a legitimate basis to withhold the documents." *Id.* The court thus ordered General Electric to "re-review all of its privilege determinations under the correct 'predominant purpose' standard" of the attorney-client privilege test and to produce a revised privilege log. *Id.* at 328.

Here, the last entry in defendant's first privilege log runs afoul of these principles. First, the entry spans ten years, well beyond what the caselaw considers a reasonable period.

Second, the description of the subject matter of these documents is exactly the type of vague and generic description found insufficient in *Deutsche Bank* and *In re Aenergy*. Again, the category descriptions must provide enough detail for the receiving party "to make an intelligent determination about the validity of the assertion of the privilege." *Rekor*, 2021 WL 5450366, at *1. *See also In re Aenergy*, 451 F. Supp.3d at 326 ("GE is reminded that [a] privilege log is not a mere administrative exercise. Its purpose is to ensure that a withholding party can justify a privilege designation.").

As demonstrated in *Aviles*, an adequate description of the subject matter of the communications—not just a generic, *ipse dixit* statement that the documents "reflect legal advice"—can be formulated without compromising the claimed privileged content. *Aviles*, 583 F. Supp.3d at 504.

Finally, this entry does not identify the titles or roles of the individuals—including non-attorneys—involved in these communications. *Aviles*, 583 F. Supp.3d at 504 ("The roles of the individuals are not privileged and would aid Plaintiffs in assessing the asserted privilege claims.").

Two points in defendants' opposition merit comment. First, defendants' reliance on *Rekor*, Dkt. #68, p. 15, is misplaced because the category descriptions in that case were far more detailed than the generic description employed in defendants' log. Second, defendants' citation to *In re Actos Antitrust Litig.*, 340 F.R.D. 549 (S.D.N.Y. 2022), Dkt. #68, pp. 15-16, is inapposite because Homeland and Ace have not argued—as the plaintiffs did in that case—that categories must be structured so that all documents within them involve the same participants and subject matter. *Id.* at 553.

Therefore, the Court finds Homeland's motion to compel well taken on this issue. Defendants shall revise the last entry of their first privilege log to break the communications into separate categories that: (1) are described with specific detail as to their subject matter so as to support the claimed privilege; (2) span no more than one year per category; (3) identify the titles and roles of the individuals involved in the communications; and (4) state the specific privilege asserted for the communications within each category.

Defendants shall provide these amended entries to Homeland and Ace within 14 days of entry of this Decision and Order.

The Court cautions defendants that should their revised log entries not meet the above standards, the Court may exercise its discretion to require a document-by-document log of those communications. *See In re Aenergy*, 451 F. Supp.3d at 328.

## **Second Privilege Log – Litigation Hold Documents**

The second issue raised in Homeland's motion to compel relates to defendants' second privilege log. That log lists six documents responsive to Homeland's document requests 4 and 5—which seek litigation-hold-related documents—but which defendants are withholding under the attorney-client privilege and the work product doctrine. Dkt. #61-8 , p. 2.

### *Relevance*

Defendants first oppose this motion by arguing that these documents are irrelevant. Dkt. #68, p. 9. This argument is without merit.

The Court explained in its prior Decision and Order how these documents— and the corresponding interrogatories which the Court ordered defendants to answer— are relevant to the applicability of Exclusion D. Dkt. #58, pp. 8, 11. In fact, the Court noted that, in response to Homeland's first motion to compel, defendants did not contest the relevancy of these documents. Dkt. #58, p. 11.

### *Work-Product Doctrine*

Defendants next argue that these six documents are protected by the work product doctrine and the attorney-client privilege.

As an initial matter, "federal law governs the applicability of the work-product doctrine in all actions in federal court." *Cicel (Beijing) Sci.& Tech. Co., Ltd. v. Misonix, Inc.*, 331 F.R.D. 218, 226 (E.D.N.Y. 2019) (citation and internal quotation marks omitted).

"The federal work-product doctrine protects from disclosure documents prepared in anticipation of litigation or for trial by or for [a] party or by or for that. . .party's representative." *Id.* "The Second Circuit has construed the phrase 'in anticipation of litigation' to mean that, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.*

"The party withholding a document on the basis of. . .the work product doctrine bears the burden of establishing facts to demonstrate applicability of the protective rule." *Mitura v. Finco Servs., Inc.*, — F.R.D. —,1:23-cv-02879, 2024 WL 4149183, at *1 (S.D.N.Y. Sept. 11, 2024) (citation and internal quotation marks omitted).

Defendants have taken the position in this litigation that Exclusion D of the Homeland policy does not apply and that they are entitled to coverage under the Homeland policy. Dkt. #19, ¶¶ 46, 53-56. This position necessarily rests on the premise that, prior to the issuance of the Homeland policy on August 1, 2013, defendants did not know, or should not reasonably have known, that an act, error, or omission would give rise to a claim. Dkt. #1, ¶ 46.

Defendants' position is fundamentally at odds with their assertion of the work-product protection for the six litigation-hold documents created in July 2012. That is, if defendants did not have the actual or constructive knowledge to trigger Exclusion D, these six documents could not have been created with an eye towards litigation related to the government's investigation.

Defendants do not address this disconnect. Instead, they cite two cases for the proposition that work-product protection may apply "even when it is entirely unknown, undetermined, or unexpected as to whether the investigation will lead to litigation." Dkt. #68, p. 11. Neither case supports defendants' position.

In *A. Michael's Piano, Inc. v. F.T.C.*, 18 F.3d 138 (2d Cir. 1994), the Court held that documents sought by the plaintiff from the FTC under FOIA were protected by the work-product doctrine even though the agency had not yet decided whether to recommend enforcement action. *Id.* at 146-147. The court noted that the relevant question is not whether litigation was a "certainty," but whether "the document was created 'with an eye toward litigation.'" *Id.* (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)).

Similarly, in *S.E.C. v. Standard*, No. 06 Civ. 7736(GEL), 2007 WL 1834709 (S.D.N.Y. June 26, 2007), the court held that notes of interviews conducted by attorneys for the Securities and Exchange Commission were protected by the work-product doctrine even though the agency had not yet commenced litigation. *Id.* at *2. The court noted that the very purpose of the interviews was to enable the SEC to decide whether to file an

action and thus the agency was then "anticipating" litigation for purposes of the doctrine. *Id.*

In contrast to these two cases, defendants have disavowed any anticipation of litigation in July 2012, and they thus have failed to carry their burden of showing that the six documents listed in their second privilege log are protected by the work-product doctrine.

### *Attorney-Client Privilege*

Where federal jurisdiction is based on diversity, as it is in this matter, "Fed. R. Evid. 501 requires the application of state law to questions of privilege." *Cicel*, 331 F.R.D. at 225-226 (citations omitted).

The attorney-client privilege protects communications between client and counsel made for the purpose of obtaining or providing legal advice that were intended to be and in fact kept confidential. *Pearlstein v. BlackBerry Ltd.*, 13-CV-07060 (CM)(KHP), 2019 WL 1259382, at *4 (S.D.N.Y. Mar. 19, 2019) (citations omitted). "As the U.S. Supreme Court explained in *Upjohn Co. v. United States*, the privilege encourages full and frank communications between a client and counsel, which in turn promotes an understanding of and compliance with the law and the administration of justice. 449 U.S. 383, 389 (1981)." *Id.* "The privilege is narrowly construed, however, because it renders relevant information undiscoverable." *Id.* (citations omitted).

The party withholding a document on the basis of attorney-client privilege bears the burden of establishing facts to demonstrate applicability of the protective rule. *Id.* at *3 (citation omitted).

As the *Pearlstein* court explained—and as this Court discussed in its prior Decision and Order—litigation hold notices are not *per se* protected by the attorney-client privilege. *Id.* at *19. "Rather, the content and circumstances of its issuance, as well as the context of the litigation, will determine applicability of any privilege." *Id.*

In addition, where a litigation hold notice merely "describes document retention practices or instructions for preservation, courts have rejected claims of attorney-client" privilege. *Id.* at *18 (citations omitted). *See also In re Pfohl Bros. Landfill Litig.*, 175 F.R.D. 13, 22 (W.D.N.Y. 1997) ("Additionally, a document is not privileged merely because it was prepared by an attorney for a client. The document must contain confidential communication relating to legal advice.") (citation omitted).

The Court concludes that, at this juncture, defendants have not carried their burden of showing that these six litigation-hold-related documents should be afforded blanket protection under the attorney-client privilege.

First, in their response to the motion to compel, defendants offer no evidence or explanation in support of the privilege claim, relying instead on their self-serving assertion of privilege in their log. Dkt. #68, pp. 10-11. "However, [t]he party

invoking a privilege has the burden of proving the facts on which the privilege claim is based, and must do so by competent and specific evidence, rather than by conclusory or *ipse dixit* assertions." *Hayden v. Int'l Bus. Machs. Corp.*, 21 Civ. 2485 (VB) (JCM), 2023 WL 4622914, at *3 (S.D.N.Y. July 14, 2023 ) (citation and internal quotation marks omitted). *See also id.* at *11 (party may provide an attorney affidavit in support of privilege claim); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 18-CV-11386 (VSB)(KHP), 2021 WL 3524081, at *3 (S.D.N.Y. Aug. 10, 2021) (finding that defendant carried burden of showing applicability of attorney-client privilege through attorney declarations).[4]

Further, the fact that counsel is a participant in the communications is alone insufficient to carry defendants' burden. *Hayden*, 2023 WL 4622914, at *4 (noting that "it is well established that merely copying a lawyer on a communication does not render it privileged") (citation omitted).

The Court also notes that while three of the six litigation hold documents are labelled "Confidential: Attorney-Client Privilege," the other three are not. Dkt. #61-8.

In sum, it is impossible to tell from this log whether these communications satisfy the requirements of the attorney-client privilege, in whole or in part. As noted, to

---

[4] While defendants filed an affidavit of counsel with their opposition, it contains no information pertinent to defendants' privilege claim. Dkt. #68-1.

the extent that the communications related to standard document-preservation instructions, they would fall outside the privilege. *Pearlstein*, 2019 WL 1259382, at *18.[5]

Therefore, the Court will take under submission this aspect of Homeland's motion. Defendants are ordered to re-review these six documents and provide to Homeland and Ace copies of the documents, redacting the portions that they contend reflect privileged communications, accompanied by affidavits or sworn declarations by counsel so attesting. Defendants shall provide such materials within 14 days of entry of this Decision and Order. Homeland and Ace shall then file a status report within 14 days of receipt of the documents advising the Court whether defendants' revised production has resolved the dispute as to these six documents.

### Ace's Motion to Compel

Ace moves to compel defendants to produce the 98 documents listed in defendants' first privilege log on the grounds that these documents were produced to third parties, thereby waiving any attorney-client privilege or work product protection, and that such waiver is not avoided under the common interest doctrine.[6]

---

[5] The Court notes that Homeland represents in its reply brief that recent deposition testimony supports that argument. Dkt. #69, pp. 13-14. The Court will not request such testimony at this juncture but may do so should this matter not be resolved pursuant to this Decision and Order.

[6] As state law applies to the attorney-client privilege analysis, so too does it apply to the common interest doctrine. *Deutsche Bank Secs. Inc. v. Kingate Global Fund Ltd.*, 19 Civ. 10823, 2022 WL 3644822, at *14 (S.D.N.Y. Aug. 24, 2022).

**The Common Interest Doctrine**

"'Generally, communications made in the presence of third parties, whose presence is known to the client, are not privileged from disclosure because they are not deemed confidential.'" *Argos Holdings Inc. v. Wilmington Trust Nat'l Ass'n*, 18cv5773(DLC), 2019 WL 1397150, at *3 (S.D.N.Y. Mar. 28, 2019) (citing *Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 27 N.Y.3d 616, 624 (2016)).

"In New York, 'where two or more clients *separately* retain counsel to advise them on matters of common legal interest, the common interest exception allows them to shield from disclosure certain attorney-client communications that are revealed to one another for the purpose of furthering a common legal interest.'" *Id.* (quoting *Ambac*, 27 N.Y3d at 625).

"The common interest doctrine permits the disclosure of a privileged communication without waiver of the privilege provided the party claiming an exception to the waiver demonstrates that the parties communicating: (1) have a common legal, rather than commercial, interest; and (2) the disclosures are made in the course of formulating a common legal strategy." *Piccolo v. Equinox Holdings, Inc.*, 22-CV-09085, 2024 WL 4125496, at *1 (S.D.N.Y. August 8, 2024) (citations and internal quotation marks omitted).

The common interest doctrine does not apply "because one party has an interest in litigation involving another party." *Hayden v. Int'l Bus. Machs. Corp.*, 21 Civ. 2485 (VB) (JCM), 2023 WL 4622914, at *8 (S.D.N.Y. July 14, 2023) (citation and internal

quotation marks omitted). "Rather, [t]here must be a substantial showing by parties attempting to invoke the protections of the privilege of the need for a common defense as opposed to the mere existence of a common problem." *Id.*

In *Ambac*, the New York Court of Appeals held, unambiguously, that communications protected by the common interest doctrine must "relate to litigation, either pending or anticipated, in order for the exception to apply." *Ambac*, 36 N.Y.3d at 620. The court rejected the argument that the doctrine should apply in the absence of pending or anticipated litigation, noting that "any benefits that may attend such an expansion of the doctrine are outweighed by the substantial loss of relevant evidence, as well as for the potential for abuse." *Id.* at 629. *See also Argos*, 2019 WL 1397150, at *3 ("New York law further requires that the common legal interest involve 'pending or reasonably anticipated litigation.'") (quoting *Ambac*, N.Y.3d at 628).

Thus, "[m]erely expressing a concern about potential litigation is insufficient where there is no evidence that [the parties] formulated a joint legal strategy to deal with the possibility." *Hayden*, 2023 WL 4622914, at *9.

### Application

The Court first notes that defendants do not contest that the 98 documents in question are relevant to Exclusion D of the Homeland policy. Dkt. #71.

Further, as noted above, defendants have expressly disavowed any anticipation of litigation related to the government investigation prior to August 1, 2013.

This would seem inconsistent with their assertion that, in March 2013, they began coordinating with GHC to prepare a joint legal defense in relation to the government's investigation. Dkt. #71, p. 13.

Defendants also have produced no evidence—by way of affidavits or otherwise—to support their invocation of the common interest doctrine.

The Court thus finds well taken Ace's request that defendants provide the documents in question to the Court for an *in camera* review. While not always appropriate, *in camera* review is commonly employed by courts evaluating whether documents are covered by the common interest doctrine. *See, e.g., Piccolo*, 2024 WL 4125496, at *1; *Hayden*, 2023 WL 4622914, at *2; *Klosin v. E.I. Du Pont De Nemours and Co.*, 1:19-CV-00109-EAW-MJR, 2022 WL 1115027, at *1 (W.D.N.Y. April 14, 2022); *Argos*, 2019 WL 1397150, at *2.

Therefore, defendants shall provide to the chambers of the undersigned hard copies of the 98 documents in question within 7 days of entry of this Decision and Order.[7] The Court will defer ruling on Ace's motion to compel until it has conducted its review of those documents.

---

[7] The Court reminds the parties that Loc. R. Civ. P. 10(a)(1) requires that all text and footnotes in court filings be in at least 12-point font, and the Court directs that this also applies to *in camera* submissions.

***Motion for Extension of Time to Complete Discovery***

The Court will grant the parties' motion to extend the discovery deadlines in this matter. Dkt. #74. However, in order that the parties may make any adjustments in their proposed new schedule in light of this Decision and Order, the Court will require the parties to submit an updated proposed Case Management Order.

## **CONCLUSION**

Consistent with this Decision and Order:

(1) Homeland's motion to compel (Dkt. #61) is granted in part and taken under submission in part;

(2) Ace's motion to compel (Dkt. #66) is taken under submission; and

(3) The unopposed motion for an extension of time to complete discovery (Dkt. #74) is granted. The parties shall submit a new proposed Case Management Order within 7 days of entry of this Decision and Order.

**SO ORDERED.**

DATED:      Buffalo, New York
                September 26, 2024

 **s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**