**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**HOMELAND INS. CO. OF**
**DELAWARE,**

                         **Plaintiff,**                    **22-CV-00462-MAV-HKS**

**v.**

**INDEPENDENT HEALTH ASS'N, INC.,**
**INDEPENDENT HEALTH CORP., DXID, LLC,**
**AND ELIZABETH GAFFNEY,**

                         **Defendants/Third-Party**
                         **Plaintiffs,**

**v.**

**ACE AMERICAN INS. CO.,**

                         **Third-Party Defendant.**

---

## DECISION AND ORDER

This case was referred to the undersigned by the Hon. William M. Skretny, pursuant to 28 U.S.C. § 636(b)(1)(A), for all pretrial matters. Dkt. #20. The case is currently assigned to the Hon. Meredith A. Vacca. (Clerk's Office Entry of 1/22/2025).

## INTRODUCTION

This is a declaratory judgment action in which plaintiff Homeland Insurance Company of Delaware ("Homeland") seeks a declaration that it has no defense or indemnity obligations arising out of an insurance policy it issued to defendant Independent

Health Association, Inc. ("IHA") as to claims asserted against IHA and other insureds[1] in a federal *qui tam* action and related arbitration. Dkt. #1, ¶¶ 1-3. Third-party defendant Ace American Insurance Company ("Ace") seeks a similar determination as to its indemnity obligations under an excess insurance policy it issued to defendants. Dkt. #30.

This matter is currently before the Court on defendants' motion to compel (Dkt. #92), Homeland's motion for attorney fees (Dkt. #95), defendants' motion for leave to file a surreply (Dkt. #122), Homeland's motion to compel (Dkt. #125), and Homeland's motion to seal (Dkt. #130).

## **BACKGROUND**

The facts alleged in this matter have been set forth in a previous Decision and Order by the then-presiding district court judge, Dkt. #51, as well as prior Decisions and Orders by the undersigned. Dkt. ##58, 78. Those decisions are incorporated here.

### *The Claims in this Action*

Briefly, Homeland and Ace seek declarations that they owe no duty to defend or indemnify defendants relating to an underlying *qui tam* action pending in this

---

[1] Defendants Independent Health Corporation ("IHC"), DxID, LLC, and Elizabeth Gaffney ("Gaffney") were also insureds under the Homeland policy. IHC and DxID are or were subsidiaries of IHA. Dkt. #1, ¶¶ 7-8. Gaffney was the Chief Executive Officer of DxID. Dkt. #1, ¶ 9.

Court, *United States ex rel. Ross v. Indep. Health Corp.*, Case No. 12-CV-299-WMS, and a related arbitration that was settled in July 2022. Dkt. #51, p. 4.[2]

In the *qui tam* action, "the government maintains that Defendants defrauded the federal Medicare program by submitting false and inflated claims for reimbursement." Dkt. #51, p. 3. The government's complaint-in-intervention alleges claims under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729, *et seq.*, and common law. Dkt. #51, p. 2. The arbitration arose, in part, out of the same allegations. Dkt. #51, p. 4.

Homeland and Ace maintain that several exclusions in the Homeland policy preclude coverage for the claims against defendants in those actions. Relevant here is Exclusion D ("the prior knowledge exclusion"), which excludes coverage for any claims, damages, or claims expenses arising out of any actual or alleged act, error, or omission if, before the inception date of the policy, defendants knew or should reasonably have known that the act, error, or omission would give rise to a claim.[3] Dkt. #1, ¶ 46.[4]

---

[2] The *qui tam* was settled per a Joint Stipulation of Dismissal entered on January 8, 2025. Case No. 12-CV-299-WMS, Dkt. #189. However, the matter remains open as the parties brief the relator's request for attorney fees.

[3] The Homeland policy was issued on August 1, 2013 and renewed on August 1, 2014. Dkt. #1, ¶¶ 13-14.

[4] Other exclusions are: Exclusion A, which excludes coverage for intentionally fraudulent acts that are established by a final adjudication, Dkt. #1, ¶45; Exclusion J, which excludes coverage for any claims, damages, or claim expenses brought by, or on the behalf of, certain governmental or regulatory bodies or agencies, Dkt. #1, ¶ 47; and Exclusion K, which excludes coverage for certain claims, damages, or claims expenses for liabilities arising under any indemnification agreement, Dkt. #1, ¶ 48.

***Facts Relevant to the Present Discovery Disputes***

**Defendant's Discovery Requests to Homeland and Ace**

On June 2, 2023, defendants served Homeland and Ace with interrogatories and document requests. Dkt. ##92-13, 92-26, 102-2, 102-3.

Interrogatory No. 3 requests that Homeland and Ace "[i]dentify all Communications and Documents concerning [their] basis for denying the Policyholders coverage under the [Homeland and Ace] Policies." Dkt. ##92-12, p. 8, 92-13, p. 8. These interrogatories define "Homeland Policies" as the two specific policies—identified by policy number—that Homeland issued to defendants on August 1, 2013 and August 1, 2014, respectively. Dkt. #102-2, p. 5. In response to Interrogatory No. 3, Homeland and Ace identified a variety of documents related to their coverage positions. Dkt. ##92-12, p. 9, 92-13, p. 8.

Interrogatory No. 5 states: "Identify all Communications and Documents addressing, describing, reflecting, analyzing, supporting, or contradicting [Homeland's and Ace's] position regarding the meaning, scope, and application of each of Exclusion A, Exclusion D, Exclusion J, and/or Exclusion K of the Homeland Policies." Dkt. ##92-12, p. 10, 92-13, p. 10. After asserting objections, Homeland responded by referring to its response to Interrogatory No. 3. *Id.* In turn, Ace asserted objections and referred to documents produced in the litigation. Dkt. #92-13, p. 10.

Defendants' requests for production to Homeland and Ace sought "[a]ll Documents and Communications identified" in their responses to defendants' first set of interrogatories. Dkt. ##92-25, p. 15, 92-26, p. 13.

Homeland produced documents to defendants in January, March, and April 2024. Bentley Decl., ¶ 6.

On June 3, 2024—nearly nine months after Homeland served its responses and objections to defendants' requests—defendants' counsel stated in an email to Homeland's counsel that Homeland "appears to be withholding interpretive materials" regarding when government investigations "can reflect an intent by the government to bring a claim." Dkt. #92-3, p. 3. Defendants' counsel stated that such materials would include written interpretations of coverage for investigations brought against other insured Medicare Advantage Organizations ("MAOs"). *Id.* Counsel asserted that such materials were responsive to, *inter alia*, Interrogatory No. 5. *Id.*

On June 10, 2024, Homeland's counsel responded: "Any non-privileged 'interpretive materials,' as you term them, would have been produced had they existed. Any privileged communications that exist would have been properly logged on our privilege log." Dkt. #102-5, p. 2.

On June 12, 2024, defendants' counsel again emailed Homeland's counsel. Dkt. #102-6. Defendants' counsel stated that defendants believed that Homeland was still

withholding documents concerning *qui tam* actions against other Homeland insured MAOs, and that Homeland's written interpretations of coverage in such actions "are directly relevant to Homeland's position that the Prior Knowledge Exclusion bars coverage here, as those coverage interpretations would speak to **when** those investigations evinced awareness of a "Claim" for purposes of coverage." Dkt. #102-6, p. 2.[5] Defendants' counsel further asserted that such materials were relevant to their document requests and Interrogatory No. 5. *Id.*

Two days later, defendants' counsel emailed counsel for both Homeland and Ace stating:

> Additionally, we have reason to believe that Chubb/Ace is withholding relevant documents and information regarding *United States v. Anthem, Inc.*, No. 20-cv-2593 (S.D.N.Y.), and specifically, Chubb's determination that a pre-suit Civil Investigative Demand issued by government authorities into diagnosis codes submitted to Centers for Medicare and Medicaid Services <u>does not</u> evince an intent by the government that it would bring a claim. As that position appears to directly contradict Chubb's coverage position in this matter, it should have been identified in Chubb's verified response to Policyholders['] Interrogatory No. 5 and produced. Hence, we would like to discuss this gap in Chubb's production on Monday during our meet-and-confer.

Dkt. #102-7, p. 2. Homeland's counsel understood this query to be directed only at Ace. Bentley Decl., ¶ 11.[6]

---

[5] Defendants' counsel gave as an example of such matters *United States of America ex rel. Benjamin Poehling v. UnitedHealthGroup, Inc.* ("the *Poehling* matter"), in which a Homeland entity was one of the defendants' insured. *Id.*

[6] Defendants' counsel's declaration states that his June 3, 2024 email requested materials related to the *Anthem* matter, but this is inaccurate. That email does not mention the *Anthem* case. Dkt. #102-4, p. 3.

The parties held a telephonic meet-and-confer on June 17, 2024. Bentley Decl., ¶ 12. Counsel for Ace stated that the *Anthem* matter was not relevant to this case, and Homeland's counsel noted that the coverage issues in the *Poehling* matter were also different. *Id.* Homeland and Ace also expressed their view that defendants' discovery requests did not actually encompass such materials. *Id.*

On June 21, 2024, Homeland's counsel emailed defendants' counsel, copying Ace's counsel, to follow up on the meet-and-confer:

> With respect to Defendants' separate inquiry regarding "interpretive materials," we continue to be of the view that we do not believe any responsive materials exist, beyond that which is reflected in our prior privilege logs. The two other matters specifically referenced by Defendants in your prior email correspondence concerned issues distinct from those of the present case, such that any sort of interpretation or analysis in those matters would not be relevant here. Moreover, it does not appear that any of Defendants' document requests could be construed to request this information.

Dkt. #102-8, p. 4.

Defendants' counsel responded by reiterating their position that interpretive materials in cases involving other MAOs insured by Homeland or Ace are relevant to the prior knowledge exclusion in this case and within the scope of defendants' discovery requests. Dkt. #102-8, p. 3.

Homeland's counsel replied that she did not believe the prior knowledge exclusion was at issue in the *Poehling* case. Dkt. #102-8, p. 2.

On June 24, 2024, counsel for Ace also responded that it would not be producing materials related to the *Anthem* matter because the "facts and legal issues in that case are entirely different than the IHA matter and therefore are both factually and legally irrelevant to this dispute." Dkt. #92-6, p. 2. Ace also reiterated its position that defendants' Interrogatory No. 5 was specific to the policies issues to IHA and did not encompass information regarding the *Anthem* matter because "[n]either those exclusions nor the Homeland policy was at issue in Anthem." *Id.* Finally, counsel for Ace pointed out that Ace was the primary—not excess—carrier in the *Anthem* case and that the coverage issue there was whether the insured had a received a "claim" under the policy, not whether a prior knowledge exclusion applied. Dkt. #92-6, pp. 2-3.

On July 8, 2024, defendants served Homeland with a Rule 30(b)(6) deposition notice listing fourteen topics of examination. Bentley Decl., ¶ 15, Dkt. #102-1. On July 22, 2024, Homeland objected to producing a witness to testify to two of these topics: Topics 10 and 11, which, respectively, sought Homeland's knowledge and assessment of the coverage issues in the *Anthem* and *Poehling* matters. Dkt. #92-7, p. 8.

Defendants served Ace with a similar Rule 30(b)(6) deposition notice, and Ace also objected to Topics 10 and 11. Dkt. #92-8, pp. 10-12.

The parties met and conferred regarding the Rule 30(b)(6) dispute on September 10, 2024, but no resolution was reached. Moura Decl., ¶ 9.; Bentley Decl., ¶ 17.

## **Homeland's Document Request No. 9**

On December 5, 2022, Homeland served defendants with its First Request for Production of Documents. Dkt. #125-3. Request No. 9 sought: "All Communications Concerning notification or reporting to Ace American, Homeland, Darwin, or any other insurance carrier, or any agent thereof, of the Government Action and/or the GHC arbitration." Dkt. #125-3, p. 6.

Defendants responded that they would produce "responsive, non-privileged notifications to insurers concerning the Government Action from April 15, 2013 onward." Dkt. #45-5, p. 14; Dkt. #45-10, p. 14.

Homeland filed a motion to compel on June 1, 2023. Dkt. #45. In that motion, Homeland challenged, *inter alia*, defendants' response to Request No. 9:

> As to Request No. 9, Homeland seeks "[a]ll communications Concerning notification or reporting to Ace American, Homeland, Darwin, *or any other insurance carrier*, or any agent thereof, of the Government Action and/or GHC Arbitration." . . . However, Defendants state that they will only produce such documents after April 15, 2013. . . Defendants, however, admit that they were aware that DxID employees were contacted by federal investigators in 2012. . . In other words, Defendants are looking for the Court's imprimatur to withhold critical documents from Homeland: namely, any

notices of claim concerning the Government Action it provided to insurance carriers prior to April 15, 2013. **It cannot be credibly disputed that communications concerning the Government Action that Defendants provided to any insurance carrier—let alone notices of claim prior to August 1, 2013—is (*sic*) relevant to the applicability of Exclusion D, as it bears on whether Defendants "know or should have reasonably known" that the Government Action would lead to a claim.**

Dkt. #45-1, pp. 21-22 (bold added).

On November 10, 2023, defendants served on Homeland amended responses and objections to Homeland's first set of document requests. Dkt. #125-4. The amended response to Request No. 9 stated that "the Policyholders have produced responsive notifications to insurers concerning the government investigation referenced in Paragraph 20 of the Policyholders' Counterclaims and the *qui tam* action filed in the Western District of New York." Dkt. #125-4, p. 14.

This amended response to Request No. 9 did not state that any documents were being withheld on the basis of defendants' objections, and Homeland understood it to "mean that responsive, non-privileged documents responsive to this request would be or had been produced." Bentley Decl., Dkt. #125-2, ¶ 9.

On January 23, 2024, the Court issued an Order requiring the parties to file a joint status report advising the Court "whether the posture of the pending discovery motions has changed." Dkt. #56.

On January 29, 2024, Homeland filed a letter on behalf of all parties advising the Court, *inter alia*, that based on defendants' amended responses and objections, it appeared that defendants "would now produce documents responsive to Requests 8-11, 13, 16" and other requests. Dkt. #57, p. 2. Homeland also noted that defendants had not yet produced such documents but had indicated that they would do so beginning February 2, 2024. *Id.* Homeland stated that, assuming such productions occurred, several requests—including Request No. 9—were no longer subject to its pending motion to compel. *Id.*

Based on this status report, the Court did not address Request No. 9 in its Decision and Order deciding Homeland's motion to compel. Dkt. #58, p. 6.

In March 2024, Homeland received documents from Willis Towers Watson ("Willis"), a non-party and defendants' insurance broker. Bentley Decl., ¶ 14. Among the documents was a March 13, 2015 email from Laura Carra ("Carra"), defendant IHA's in-house counsel, to a Willis client manager in which the reporting of the *qui tam* matter to defendants' carriers was discussed. Bentley Decl., ¶ 15.[7] This document had not been produced by defendants. Bentley Decl., ¶ 16.

---

[7] This document, which Homeland filed as an exhibit to its present motion to compel, was placed under seal after defendants notified Homeland that the document had been designated as "confidential" pursuant to the protective order in this matter.  Dkt. ##126, 128. The document is the subject of the motion to seal that is also presently before the Court, as discussed below. Dkt. #130.

Thereafter, Homeland's counsel inquired of defendants' counsel what documents were and were not produced in response to Request No. 9, and she also asked why the Willis document was not produced. Bentley Decl., ¶ 172.[8]

Homeland's counsel emailed defendants' counsel on May 28, 2024, again asking about documents that defendants had not produced. Dkt. #127-11, pp. 4-5. Defendants' counsel responded, in part:

> Homeland's April 29th letter demands additional categories of documents relating to Homeland's Requests for Production of Documents Nos. 8, 9, and 10. Policyholders believe they have sufficiently responded regarding these categories. Following Homeland's filing of its June 1, 2023 motion to compel, Policyholders and Homeland conferred and reached various compromises on several discovery issues raised by Homeland, including as reflected in Policyholders' Amended Responses to Homeland's First Set of Requests for Production of Documents. In response to the Court's January 23, 2024 Order directing that Homeland advise whether the posture of its discovery motion had changed, Homeland did not indicate that it was taking issue with the compromises and limitations for RFP Nos. 8, 9, and 10, and Policyholders produced documents accordingly. Hence, we view these categories as resolved.

Dkt. #127-11, p. 3.

On June 3, 2024, defendants' counsel again emailed Homeland's counsel:

> Similarly, with respect to Request Nos. 6, 9, 10, and 12—We already addressed these below and these, too, are addressed in our November 2023 Amended Responses. The referenced Willis document does not fall within the scope of what we agreed to produce in response to Request No. 9 and

---

[8] Bentley's declaration does not state the date of this letter or attach it as an exhibit. However, it appears from other documents that the letter was likely dated April 29, 2024. Dkt. #127-11, p. 5; Dkt. #127-12, p. 4.

Homeland thereafter withdrew its motion to compel as to that Request.

Moura Decl., ¶ 13.

On June 17, 2024, counsel for Homeland and defendants had a meet-and-confer to discuss Request No. 9. Moura Decl., ¶ 14. Defendants' counsel stated that defendants had agreed to produce insurance claim notifications in response to that request, and "that is what Policyholders produced." *Id.*

In an email sent on July 15, 2024, defendants' counsel stated that defendants believed that their November 10, 2023 amended responses to Homeland's document requests "were clear about what Policyholders were producing in response to" Request No. 9 and that "we believe Policyholders have satisfied their obligations with respect to these requests." Dkt. #127-12, pp. 3-4.

Homeland's counsel responded:

[W]e continue to maintain that we are entitled to the documents contained in Requests 6 and 9, and Defendants have not produced such documents. **It defies logic that in this insurance coverage case concerning coverage for the Government Action, Defendants would refuse to produce documents such as all communications concerning notice and reporting the Government Action to its insurance carriers.** Nonetheless, as this seems to be the position Defendants are taking, we trust that our conferral obligations on this matter [have] now been completed.

Dkt. #127-12, pp. 2-3 (bold added).

On January 8, 2025, Homeland took Carra's deposition. Bentley Decl., ¶ 20. Carra testified that she was not sure if her emails had been searched in response to discovery requests in this matter, and that Willis' current retention policy for emails is two years. Dkt. #125-6, pp. 4-5.

On February 18, 2025, Homeland's counsel sent a letter via email to defendants' counsel requesting that they confirm whether Carra's emails were searched in response to Homeland's discovery requests and, further, "whether Independent Health's record retention policy, as referenced by Ms. Carra, would have resulted in documents prior to a certain date being unavailable for review and production by Defendants in this case." Dkt. #125-7, p. 4.

Defendants' counsel responded on March 3, 2025, stating that "Ms. Carra's documents were searched, and we do not believe Independent Health's record retention policy would have resulted in Ms. Carra's relevant, responsive documents prior to a certain date being unavailable." Dkt. #125-8, pp. 7-8.

The parties held a meet-and-confer on April 1, 2025, during which defendants' counsel "seemed to indicate that the reason the Willis Document (and presumably others like it) was not produced was *not* because Defendants[] no longer had it in their possession, but rather because Defendants were taking the position they would not produce documents responsive to Homeland's Request No. 9 that were *communications concerning notification* or reporting of the Government Action to

Defendants' insurance carriers." Bentley Decl., ¶ 27. That is, "Defendants were taking the position that in response to Request No. 9, they would *only* produce the *notifications* to insurers of the Government Action themselves." *Id.* Homeland objected to this interpretation, requested that all documents in response to Request No. 9 be produced, and requested that defendants respond by April 4, 2025 as to whether they would produce such documents. Bentley Decl., ¶¶ 28-29. Defendants did not respond. *Id.*

### The Court's Prior Rulings

Also relevant to the motions now before the Court are several previous discovery rulings.

### *The February 1, 2024 Decision and Order*

On February 1, 2024, the Court issued a Decision and Order granting a motion to compel filed by Homeland and ordering defendants to answer interrogatories and document requests to which they had largely failed to respond. Dkt. #58. The Court also ordered that if defendants invoked the attorney-client privilege, they were required to comply with Fed. R. Civ. P. 26(b)(5) and Local Rule 26(d). Dkt. #58, pp.11, 14.

However, the Court took under advisement a dispute over two document requests regarding litigation hold notices, and it ordered defendants to provide privilege logs to Homeland so that it could assess defendants' assertions of privilege. Dkt. #58, p. 13. Defendants did not object to this Decision and Order.

### The September 26, 2024 Decision and Order

Homeland filed a second motion to compel on June 13, 2024, joined by Ace, challenging the sufficiency of two privilege logs produced by defendants, as well as defendants' withholding of six litigation-hold documents on the basis of the attorney-client privilege and the work product doctrine. Dkt. ##61, 66.

On September 26, 2024, the Court issued a Decision and Order ruling on these motions. Dkt. #78. The Court found defendants' first categorical privilege log—which grouped multiple documents over a ten-year period into a single entry, with insufficient descriptions—violative of principles applicable to such privilege logs. Dkt. #78, pp. 8-13. The Court thus ordered defendants to provide Homeland and Ace with a revised log correcting these deficiencies. Dkt. #78, p. 13.

As to the litigation-hold documents, the Court held that they were not protected by the work-product doctrine. Dkt. #78, pp. 14-17. However, the Court concluded that it was impossible to tell from the second privilege log whether the documents were protected by the attorney-client privilege. Dkt. #78, pp. 19-20. The Court thus ordered defendants to re-review the documents and provide to Homeland and Ace copies redacting the portions for which they claimed the privilege. *Id.* The Court also ordered Homeland and Ace to file a status report after reviewing the redacted documents informing the Court whether the dispute had been resolved. *Id.*[9]

---

[9] The Court also considered Ace's motion to compel the 98 documents encompassed by defendants' first privilege log. The Court ordered defendants to produce these documents to the Court *in camera* so the Court could consider whether any were protected from disclosure. Dkt. #78, p. 23.

Defendants filed objections to this Decision and Order, Dkt. #80, and, on October 22, 2024, the then-presiding district judge overruled them.

In the meantime, defendants produced to Homeland and Ace redacted copies of the six litigation-hold documents. On October 21, 2024, Homeland filed a status report informing the Court that the production had resolved the dispute only as to one of the six documents. Dkt. #88. On November 5, 2024, the Court therefore ordered that defendants produce the remaining five documents for *in camera* review by the Court. Dkt. #91.[10]

After reviewing those documents *in camera*, the Court concluded that they were not protected by the attorney-client privilege and ordered that they be produced. Dkt. #94. Defendants objected to this ruling and, on February 7, 2025, the currently presiding district judge granted those objections and relieved defendants of the obligation to produce the five documents in question. Dkt. #120.

## DISCUSSION AND ANALYSIS

### Legal Standards

Pursuant to Fed. R. Civ. P. 26, parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

---

[10] The Court also ruled on Ace's motion to compel as to the 98 documents in defendants' first privilege log, holding that some were protected by the common interest privilege, the attorney-client privilege, and/or the work-product doctrine. Dkt. #91, pp. 6-8.

"To evaluate whether document discovery is proportional, the Court examines the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Tripathy v. Schneider*, 21-cv-6339-FPG-MJP, 2025 WL 1359280, at *2 (W.D.N.Y. May 9, 2025) (citation and internal quotation marks omitted).

While discovery in federal court is "broad and permissive," a "party moving to compel bears the burden of showing that the discovery sought meets the Rule 26 relevance standard." *Id.* "Thus, the party seeking discovery must make some showing that the discovery it wants, first, has any tendency to make a fact more or less probable than it would be without the evidence, and second, the fact is of consequence in determining the action." *Id.*

"Put another way, proportionality goes hand-in-hand with relevance." *Id.* (cleaned up). The more relevant the information sought is, "the less likely a Court would find the subject discovery disproportionate." *Id.* "And so, while the scope of discovery is broad, it is not limitless." (citation and internal quotation marks omitted).

***Defendants' Motion to Compel***

Defendants' motion to compel seeks "other claims" discovery from Homeland and Ace, *i.e.*, information concerning other insureds who are also MAOs; who were also subject to investigation and suit by the government; and with respect to whom Homeland and/or Ace have disputed coverage under the policies they issued to them. Defendants argue that such discovery is responsive to their Interrogatory No. 5, relevant to the application of Exclusion D in this matter, and not unduly burdensome. Dkt. #92-1, pp. 17-21. The Court disagrees.

First, Homeland argues that the information that defendants now seek does not fall within the scope of Interrogatory No. 5. Dkt. #102, pp. 11-13.

As noted above, Interrogatory No. 5 states: "Identify all Communications and Documents addressing, describing, reflecting, analyzing, supporting, or contradicting [Homeland's and Ace's] position regarding the meaning, scope, and application of each of Exclusion A, Exclusion D, Exclusion J, and/or Exclusion K of the Homeland Policies." Dkt. ##92-12, p. 10, 92-13, p. 10.

In their responses to this interrogatory, coupled with their responses to Interrogatory No. 3, Homeland and Ace identified a variety of documents relating to their positions regarding coverage under the policies they issued to defendants, including documents from the government's investigation, pleadings, correspondence concerning coverage, and arbitration documents.

Some nine months later, defendants raised the argument that Interrogatory No. 5 also sought information involving other insureds and policies in relation to litigation with the government where Homeland and/or Ace had disputed coverage. Defendants based this interpretation on the "contradicting Homeland's position" language in Interrogatory No. 5.

This interpretation of Interrogatory No. 5 is strained and suggests a *post hoc* attempt to broaden the scope of the request. If defendants originally intended to request the "other claims" information they now seek, one would have expected a clear interrogatory so stating.

In any event, even accepting this interpretation, the weight of authority—both within the Second Circuit and without—counsels against the production of such "other claims" materials where they involve the interpretation of different insurance policies, different policy terms, and different factual contexts. *See Daileader v. Certain Underwriters at Lloyd's London-Syndicate*, 22 Civ 5408 (PGG), 2025 WL 1021756, at *19-20 (S.D.N.Y. Mar. 31, 2025) (rejecting insured's request for documents relating to other policies issued by insurer, holding that "other D&O policies issued by Syndicate 1861 are not at issue in this case, and requiring Syndicate 1861 to respond to Daileader's document requests would clearly be burdensome and not proportional to the needs of this case") (citation and internal quotation marks omitted); *Computer Sciences Corp. v. Endurance Risk Solns. Assurance Co.*, 1:20-cv-01580-MKV, 2022 WL 1192782, at *2

(S.D.N.Y. Mar. 10, 2022) (denying insured's request for information regarding policies issued by insurer to other insureds, noting that "Courts in this Circuit have held that the contents of other policies are irrelevant to the extent those policies are not at issue in a case") (citations omitted); *Utica Mut. Ins. Co. v. R&Q Reinsurance Co.*, No. 6:14-CV-00700 (GTS/TWD), 2015 WL 7176450, at 2* (N.D.N.Y. June 2, 2015) (denying motion to compel documents concerning policies issued to other insureds in same industry); *John Hancock Life Ins. Co. v. Meer,* 09 CV 2561 (JBW), 2010 WL 11626953, at *4-5 (E.D.N.Y. May 26, 2010) (denying motion to compel insurer to produce files regarding other life insurance policies it issued, despite insureds' argument that such documents could bear on issue of materiality of alleged misrepresentations in policy applications); *Kingsway Fin. Servs., Inc. v. PriceWaterhouse-Coopers LLP*, No. 03 Civ. 5560(RMB)(HBP), 2008 WL 4452134, at *5 (S.D.N.Y. Oct. 2, 2008) (quashing subpoena seeking discovery of policies not at issue in case). *See also First Horizon Nat'l Corp. v. Houston Cas. Co.*, No. 2:15-cv2235-SHL-dkv, 2016 WL 5869580, at *7-9 (W.D. Tenn. Oct. 5, 2016) (denying motion to compel insurer to provide information concerning its treatment of other insurance claims, despite insured's argument that information was relevant to insurer's policy interpretation); *Leksi, Inc. v. Fed. Ins. Co.*, 129 F.R.D. 99, 105-06 (D. N.J. 1989) (denying motion to compel insurer to produce information regarding insurer's application of policy language to claims of other insureds; information would be only remotely relevant and was disproportional).

Here, defendants do not dispute that the Homeland policies under which they were insured are not at issue in the *Poehling* and *Anthem* cases, or in any other

cases. Moreover, Ace asserts, and defendants do not dispute, that the coverage dispute in the *Anthem* case—in which Ace was the primary, not excess carrier—turns on the definition of a "Claim," which is not a policy term disputed in this matter. Similarly, Homeland asserts, also without contradiction by defendants, that the *Poehling* matter does not involve a prior-knowledge exclusion.

Thus, to the extent that the information that defendants now seek to compel is relevant, it is weak. Discovery on such tangential matters "will require discovery of entirely different contracts that are not germane or are only faintly relevant, and would lead to an unnecessary, burdensome, and confusing diversion from the real issues in dispute." *Utica Mut. Ins. Co.*, 2015 WL 7176450, at *2.

The Court in *First Horizon Nat'l Corp.* aptly summarized these considerations:

> As the Defendants maintain, the positions they took in other claims depends on the policy language and the facts of the particular case, which are necessarily different from the policies and facts of the instant case. Even if the Defendants have in fact taken conflicting positions in the past regarding the same terms at issue in this case, it would not aid the court in interpreting the policy language at issue or in determining the Defendants' intent in the instant case. **Any relevance would be remote and the discovery requested would amount to nothing more than a fishing expedition. Further, even if such information may be considered remotely relevant, . . . its production would be unduly burdensome and disproportionate to this litigation.**

*First Horizon Nat'l Corp.*, 2016 WL 5869580, at *7 (emphasis added).

This Court also agrees that such "other claims" discovery in a declaratory judgment action such as this "would lead to even further discovery disputes and create extended mini-trials," *id.* at *9, and it also "entails a frightening potential for spawning unbearable side litigation." *Leksi*, 129 F.R.D. at 106.

Defendants cite two cases in support of their position. The first, *Young Israel of New Hyde Park v. Philadelphia Indem. Ins. Co.*, CV 08-3959(TCP)(ARL), 2009 WL 10745812 (E.D.N.Y. Oct. 16, 2009), is distinguishable. There, plaintiff sought discovery of other water damage claims arising out of the same storm on which plaintiff's claim was based. *Id.* at *1.

Second, defendants cite *Mariner's Cove Site B Associates v. Travelers Indem. Co.*, No. 04Civ,1913(KMW)(RLE), 2005 WL 1075400 (S.D.N.Y. May 2, 2005). The Court there permitted "other claims" discovery for the insurers' handling of claims similar to plaintiff's, all arising out of the attacks in New York on September 11, 2001. *Id.* at *1.

Defendants have shown no such factual or policy similarities here, and the Court thus concludes that the considerations discussed above strongly favor denial of defendants' motion to compel as to Interrogatory No. 5. For the same reasons, the Court concludes that Homeland and Ace have no obligation to designate Rule 30(b)(6) witnesses to testify to such matters.

***Homeland's Motion for Attorney Fees***[11]

Homeland seeks its attorneys' fees and costs incurred in litigating the discovery motions that were subject to the Court's previous rulings, arguing that the Court granted nearly all the relief Homeland sought and that applicable authorities mandate an award of fees and costs. Dkt. #95-1.

Rule 37 of the Federal Rules of Civil Procedure provides that if a motion to compel is granted "the court must, after giving an opportunity to be heard, require the party. . .whose conduct necessitated the motion. . .to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

However, a court must not order such payment if "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure or nonresponse was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Smith v. Evans*, 21-CV-188-LJV-MJR, 2025 WL 1096920, at *3 (W.D.N.Y. April 11, 2025) (citing Fed. R. Civ. P. 37(a)(5)(A)).

---

[11] This motion was fully briefed prior to Judge Vacca's ruling on February 7, 2025, granting defendants' objections to the undersigned's order directing defendants to produce the five litigation-hold documents discussed above. Defendants have filed a motion for leave to file a surreply to address the import of that ruling on this motion, as well a letter filed by Homeland in relation to the recusal of Judge Sinatra, who was previously presiding over this case. Dkt. #122. However, the Court is aware of these filings and takes notice of them in considering this motion. The motion for leave to file a surreply will thus be denied.

An award of expenses under Rule 37 is mandatory unless one of these three exceptions applies. *Id.* (citation omitted).

"Whether a party was substantially justified in resisting discovery is determined by an objective standard of reasonableness and does not require that the party have acted in good faith." *Xerox Corp. v. Conduit Global, Inc.*, 6:21-CV-06467 EAW, 2025 WL 586244, at *2 (W.D.N.Y. Feb. 24, 2025) (citation and internal quotation marks omitted). "Substantial justification exists where there is justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request, or if there exists a genuine dispute concerning compliance." *Id.*

Defendants oppose Homeland's motion on the grounds that their discovery positions were substantially justified and that other circumstances would make an award of expenses unjust. Dkt. #110, pp. 17-28. The Court disagrees, with the exception of Homeland's motion to compel the five litigation-hold-related documents which Judge Vacca ruled were protected by the attorney-client privilege.

With respect to Homeland's motion to compel that was the subject of this Court's February 1, 2024 Decision and Order, Dkt. #58, the Court noted that defendants had largely refused to respond to Homeland's December 2022 document requests and interrogatories. Dkt. #58, p. 5. The Court found, nonetheless, that twelve interrogatories

sought information that was "clearly relevant as to Exclusion D" of the Homeland policy. Dkt. #58, p. 8.

The Court also found defendants' arguments opposing Homeland's motion to compel responses to some of these interrogatories to be "without merit," "circular," "self-serving," "not well founded," and "improper." Dkt. #58, pp. 8-10.

The Court granted Homeland's motion as to interrogatories and most document requests at issue, ordering defendants to provide a privilege log for certain documents for which they had invoked the attorney-client privilege. Dkt. #58, p. 13.

Defendants did not file objections to this Decision and Order.

The Court does not find persuasive defendants' argument that its position on Homeland's motion to compel was substantially justified because it believed that discovery sought by Homeland would be potentially prejudicial in the underlying *qui tam* action. Dkt. #110, pp. 18-23. Judge Skretny rejected this argument in denying their motion to stay this case, Dkt. #51, and this Court rejected it as "without merit" in the February 1, 2024 Decision and Order. Dkt. #58, p. 8.[12]

---

[12] The Court also finds irrelevant a letter submitted by Homeland to Judge Sinatra regarding circumstances under which he decided to recuse himself from this matter. Dkt. #116. Judge Sinatra's involvement in the underlying *qui tam* action prior to taking the bench has nothing to do with the scope or propriety of discovery in this matter.

The Court thus finds that defendants' positions on the issues in this first Decision and Order were not "substantially justified," and that Homeland's motion for attorneys' fees is well taken as to its motion to compel that was the subject of that decision.

In a second Decision and Order dated September 26, 2024, the Court granted another motion to compel by Homeland on the basis that a privilege log provided by defendants to Homeland and Ace ran "afoul" of various well-established principles applicable to categorical privilege logs. Dkt. #78, pp. 8-14. The Court took under submission the motion as it pertained to a second privilege log related to the litigation-hold documents. Dkt. #78, p. 20.

Defendants filed objections to this Decision and Order, Dkt. #80, which the then-presiding district judge overruled on October 22, 2024. Dkt. #90.

Defendants' argument that its position on the deficient categorical privilege log it produced was substantially justified, Dkt. #110, pp. 26-28, is conclusory and ignores the authorities set forth in the September 26, 2024 Decision and Order.

Finally, after reviewing *in camera* the five litigation-hold-related documents, the Court held that they were not protected by the attorney-client privilege and ordered defendants to produce them. Dkt. #94. As noted above, defendants objected to this ruling, and Judge Vacca granted those objections. Dkt. #120.

Therefore, the Court holds that Homeland's motion for an award of attorney fees and costs is well taken, except as to expenses incurred with respect to the litigation-hold-related documents that Judge Vacca found to be privileged. The Court will defer ordering a revised fee affidavit pending the resolution of any objections to this Decision and Order.[13]

### *Homeland's Motion to Compel*

Homeland's motion to compel asks the Court to order defendants to respond fully to its Document Request No. 9. Dkt. #125-1.

As noted above, this document request sought: "***All Communications Concerning*** notification or reporting to Ace American, Homeland, Darwin, or any other insurance carrier, or any agent thereof, of the Government Action and/or the GHC arbitration." Dkt. #125-3, p. 6 (emphasis added).

The result of the rather convoluted procedural history of this request is that defendants have taken the position that they will produce—or have produced—only actual notifications to their insurers, rather than "all communications" concerning such

---

[13] Defendants also assert, without citation to authority, that Homeland may not recover its fees and costs in defending against defendants' objections to the above Decision and Orders, or in connection with its fee motion. Dkt. #110, p. 29. This would be correct with respect to defendants' successful objections to the Court's November 18, 2024 Decision and Order, Dkt. #94, but otherwise this argument is erroneous. *See Rahman v. The Smith & Wollensky Rest. Grp.*, No. 06 Civ. 6198(LAK)(JCF), 2009 WL 72441, at *9 (S.D.N.Y. Jan. 7, 2009) (holding that defendants were entitled to recover fees and costs in opposing plaintiff's Rule 72 objections, as well as those incurred in preparing fee application).

notifications, as requested in Request No. 9. These are potentially two very different universes of documents.

"Communications" concerning notices to defendants' insurers, should they exist, would obviously be relevant, for example, to Exclusion D, which pertains to defendants' knowledge prior to issuance of the Homeland policy that a claim against them would be brought. It is not difficult to imagine that such communications—internally or otherwise—might precede the actual, formal notice given to one's insurers.

Defendants assert in opposition to this motion that "Homeland's own arguments to the Court in its first Motion to Compel reflect that Homeland did not view RFP 9 as contemplating these type of post-August 1, 2013 communications," presumably referencing the Willis document. Dkt. #127, p. 6. That is not accurate.

Homeland stated in its motion to compel, in part:

> **It cannot be credibly disputed that communications concerning the Government Action that Defendants provided to any insurance carrier—let alone notices of claim prior to August 1, 2013—is (*sic*) relevant to the applicability of Exclusion D, as it bears on whether Defendants "know or should have reasonably known" that the Government Action would lead to a claim.**

Dkt. #45-1, pp. 21-22 (bold added). Homeland thus did not limit this request as defendants assert. Moreover, it is entirely possible that post-August 1, 2013 communications could be relevant to what defendants knew or reasonably should have known before that date.

Rather, it appears from the above chronology that defendants *unilaterally* narrowed this request by limiting it to only formal notices. Indeed, defendants now state in their opposition: "First, the communications sought in Homeland's Motion are outside the scope of what Homeland demanded ***and what Policyholders agreed to provide in response***." Dkt. #127, p. 6 (emphasis added). *See also* Dkt. #127, p. 12 (stating that the Willis document "is not within the scope of what Policyholders committed to producing in response to RFP 9.").

While defendants allude to "compromises" reached during the conferral process regarding Homeland's June 1, 2023 motion to compel, they point to no evidence that Homeland ever agreed to defendants' narrowing of Request No. 9.

Was it apparent from defendants' responses that they were agreeing to produce only a potential subset of what Request 9 sought? Perhaps, but they did not indicate that they were withholding documents or disclose forthrightly the distinction they were making. And Homeland's counsel avers that they understood from defendants' amended responses that defendants were agreeing to produce documents responsive to Request No. 9, and they so informed the Court. Bentley Decl., Dkt.#125-2, ¶¶ 9-13.

Defendants' argument that Homeland's motion is barred by undue delay or is untimely is without merit. As the above factual background demonstrates, it was the production of the Willis document, subsequent conferrals, and the Carra deposition in

February of this year that brought into focus the position that defendants took as to Request No. 9. Moreover, Homeland's motion was filed prior to the discovery deadline.

Defendants' final argument that Request No. 9 "effectively propounds a new request for documents," Dkt. #127, p. 24, is patently untrue. Nor, for the reasons discussed above, is the request overbroad, unduly burdensome, or not proportional to the needs of this case.

"Discovery is not a matter of gamesmanship nor conducted like a game of chess." *Gilead Sciences, Inc. v. Safe Chain Solns. LLC*, 345 F.R.D. 22, (E.D.N.Y. 2024) (citations and internal quotation marks omitted). "Rather, the over-arching purpose of the discovery rules is to encourage the disclosure of information and materials to avoid unnecessary surprise and to level the playing field for both parties to the litigation." *Id.*

The Court notes that defendants' counsel avers that an "additional sweep of documents" was conducted in relation to Request No. 9, and that "[n]o responsive communications were located following this search." Moura Decl., Dkt. #127-1, ¶ 16. However, this assertion states that the search was for "email communications dated prior to March 13, 2015." *Id.*

This appears to be another unilateral limitation on Request No. 9, which is improper.

The Court will thus grant Homeland's motion to compel defendants to provide a complete response to Document Request No. 9. Should defendants withhold documents, they shall state the basis for doing so and comply with all applicable rules.

### Homeland's Motion to Seal

Homeland's motion to seal the Willis document, discussed above, is something of a procedural oddity. That is, although Homeland is the movant, it does not believe that this document satisfies the definition of "Confidential Information" set forth in the protective order in this case. Dkt. #132, p. 5. Conversely, defendants argue that the document relates to a sensitive legal matter. Dkt. #133, p. 9.

The parties do not agree on that issue, nor could they agree on which party was obliged to move to continue the seal on the document. Dkt. #132, pp. 4-5. Homeland states that it agreed to file this motion "in a good faith effort to resolve this matter and avoid further escalation," and that it does not object to the document remaining under seal for the duration of this matter. Dkt. #132, p. 5.

While a presumption of public access applies to judicial documents, such as attachments to court filings, that presumption is weaker with respect to materials submitted in connection with non-dispositive motions, including discovery motions. *Xerox Corp. v. Conduit Global, Inc.*, 6:21-CV-06467 EAW, 2025 WL 586244, at *4 (W.D.N.Y. Feb. 24, 2025) (citations omitted).

The Court accepts defendants' argument that the Willis document—which they assert they requested be treated as confidential when it was originally produced—contains sensitive communications sufficient to overcome the presumption of public access.

The Court will order that the document remain under seal pending further order of the Court.

## CONCLUSION

Consistent with this Decision and Order: (1) Defendants' motion to compel (Dkt. #92) is denied; (2) Homeland's motion for attorneys' fees and costs (Dkt. #95) is granted in part and denied in part; (3) defendants' motion for leave to file a surreply (Dkt. #122) is denied; (4) Homeland's motion to compel (Dkt. #125) is granted; and (5) Homeland's motion to seal (Dkt. #130) is granted.

**SO ORDERED.**

DATED:    Buffalo, New York
          June 5, 2025

                              **s/ H. Kenneth Schroeder, Jr.**
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**